PEORIA & E. RY. CO. v. COSTER et al.

(Circuit Court, S. D. New York. August 25, 1899.)

RAILROADS—REORGANIZATION AGREEMENT—ENFORCEMENT BY BONDHOLDERS.

Bondholders of a railroad company, who have exchanged their bonds for those of a reorganized company, which, by the reorganization agreement, were to be made a first lien on the property, have the right to enforce such agreement, and to insist upon the retention by the reorganization committee of all securities placed in its hands to secure the taking up of prior liens until their extinguishment is assured, and an arrangement by which such liens are to be paid off or extended at the option of the holders does not meet the requirements of the agreement.

This was a suit in equity to compel the delivery to complainant of certain securities.

This cause comes here upon pleadings and proofs. There seems to be no dispute as to the facts. The relief sought is the delivery by defendants, Coster and others, of certain securities to complainant. Said defendants are the reorganization committee of the Ohio, Indiana & Western Railway Company. Complainant is the successor railway, created under reorganization agreement in the usual way.

Melville E. Ingalls, Jr., for complainant.

Francis Lynde Stetson, for defendants Coster and others.

Butler, Notman, Joline & Mynderse, for defendants Central Trust Co. and others.

LACOMBE, Circuit Judge. By the terms of the reorganization agreement, there were to be issued $10,000,000 first consolidated mortgage bonds of the plaintiff company. Of these the holders of non-preferred first mortgage bonds of the Ohio, Indiana & Western were to receive $6,500,000, bond for bond. Other distributees were also to receive divers parts of this issue. By the terms of this agreement, the said bonds were to be or become, in the hands of their holders, absolute first mortgage bonds, unincumbered by any prior lien; for it was expressly provided that $1,500,000 of them was to be held by the committee for the purpose of taking up underlying bonds, viz. first mortgage 7 per cent. bonds of the I., B. & W., $1,000,000, and first mortgage 5 per cent. preferred bonds of the Ohio, Indiana & Western, $500,000. The 7 per cent. bonds aforesaid fall due January 1, 1900, and the complainant has provided for the payment thereof at par, in cash, upon that date, or, if desired by the holders thereof, for the extension of such maturing bonds to January 1, 1940, at 4 per cent. To the extent to which the holders of these underlying bonds may elect to receive cash, the provisions of the reorganization agreement will be carried out; but the extension of any of them, as liens prior to the new securities, is not an execution of the terms of the agreement. Neither in letter nor in spirit can the bonds so extended be held to be "taken up." The holders of the new bonds, therefore, who are represented here by the defendants Central Trust Company and Fairbanks, are entitled to insist that the reorganization committee shall retain in its hands whatever securities it may

have which are pledged to the carrying out of such agreement, and to meeting whatever expense may be incurred in so doing.

The particular securities now asked for consist of certain cash, stock of another road, and certain stock and bonds of complainant (other than the $1,500,000 reserved bonds). They were placed in the hands of the committee by the complainant company, and it may well be that, coming thus to the committee, they came impressed with a trust by virtue of the reorganization agreement alone; but it is not necessary now to decide that question. They were turned over under a written agreement between the complainant, the committee, and the Cleveland, Cincinnati, Chicago & St. Louis Railway Company (to which the complainant railway had been leased). By this agreement, which was manifestly intended as ancillary to the reorganization agreement, these securities were "pledged and appropriated as a provision for the premium which may be necessarily allowed in effecting the exchange of the $1,000,000 of first consolidated mortgage bonds of the party of the second part [complainant], reserved under the terms of the mortgage securing the same, for taking up certain prior bonds of like amount of the I., B. & W. Railway Company." As was said before, this trust has not been carried out, nor will it be till the last outstanding underlying bond of the $1,000,000 7 per cent. bonds of the I., B. & W. has been exchanged, or extinguished by payment. It is true that the holders of Peoria & Eastern 4 per cent. bonds are not specifically designated as beneficiaries under the agreement, but it is manifest that it was made expressly for their benefit. Incidentally, the holders of the old I., B. & W. bonds might benefit by having some fund provided out of which they might be paid the premium to which they might be entitled if they chose to exchange their 7 per cent. securities for 4 per cent. before maturity; but it is quite apparent that the property, even at the time of reorganization, was worth much more than the $1,500,000 of prior liens, and the holders of the old bonds were abundantly secured. The real beneficiaries under the ancillary agreement were the new 4 per cent. bondholders, who, by means of the premium therein provided for, were to have their nominal first mortgage turned into a real one. The contract was entered into for their benefit. Such benefit would be the direct result of performance, and was manifestly within the contemplation of the parties. The complainant came into being as a result of the reorganization agreement. All that it had it received under such agreement. It was a careful and complete carrying out of the provisions of such agreement, which was to make it a solvent, going concern, with some prospect of betterment in the future; and when it entered into the ancillary agreement, for the purpose of aiding in carrying out the reorganization agreement, it must be understood to have intended that all and any cestuis que trustent, under the reorganization agreement, might insist upon the carrying out of the ancillary agreement, which was made for their benefit. The principle of Lawrence v. Fox, 20 N. Y. 268, seems to apply. See, also, Austin v. Seligman (C. C.) 18 Fed. 519. The bill of complaint is dismissed.