MERVILLE H. CARTER, ET AL.,

*vs.*

FIRST NATIONAL BANK OF POCAHONTAS,
A BODY CORPORATE, ET AL.

---

THE ORGANIZATION COMPANY, A CORPORATION,

*vs.*

FIRST NATIONAL BANK OF POCAHONTAS,
A BODY CORPORATE, ET AL.

---

BIG VEIN POCAHONTAS COMPANY,

*vs.*

FIRST NATIONAL BANK OF POCAHONTAS,
A BODY CORPORATE, ET AL.

*Pleading in equity: amendments to bill; effect on answer previously filed. Parties: privity. Contracts with corporation: bill to annul——; when corporation not necessary party. Bondholders' committee: duty of——.*

Where an amendment has been made to a bill in equity, with the leave of the Court, it supersedes that for which it has been substituted and becomes, for the purposes of the case, the only pleading of the plaintiff.                    p. 586

When a bill is amended, the former answers, unless adopted as answers to the amended bill, are out of the case, and are not to be considered in determining the sufficiency of the bill.
                                        p. 586

# 582 CARTER vs. 1ST NAT'L BK. POCAHONTAS.

All persons materially interested in the subject-matter of a litigation ought to be made parties to the suit.          p. 586

But unless the proceedings are *in rem*, there must be something in the nature of privity between the parties.          p. 586

Where by an amendment to a bill of complaint, the relief praying that a contract with a certain corporation be declared null and void, is stricken out, such corporation is not a necessary party.                                              p. 587

Where a bill of complaint, among other things, seeks to restrain a bondholders' committee and to have declared null and void an agreement entered into by the committee for the purchase of other properties, a mere general allegation that the committee was *about to acquire* a certain other corporation, without specifying how or through whom it was to be acquired, does not make such other corporation a necessary party, so as to make the bill demurrable on account of the complainant's failure to make it a party.                              p. 587

A bondholders' committee, formed for the purpose of representing the bondholders' interests, in the reorganization of the corporation, is to be held to the most strict accountability, and in construing the terms of an agreement between such a committee and the bondholders, in case of doubt, the construction must be placed upon it that is the most favorable to the latter.
                                                         p. 590

*Decided May 4th, 1916.*


Three appeals in one record from Circuit Court No. 2 of Baltimore City.   (HEUISLER, J.)


The facts are stated in the opinion of the Court.


The causes were argued together before BOYD, C. J., BRIS-COE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Wm. H. DeC. Wright* (with whom were *R. B. Chapman* and *E. D. Martin* on the brief), for Merville H. Carter *et al.*

*George W. Lindsay* and *R. B. Tippett* (with whom was *J. Royal Tippett* on the brief), for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

The record in this case though voluminous, presents but two questions: one of equity pleading, and the other the sufficiency in law of the amended bill of complaint to require the defendants to answer. The original bill was filed by two holders of bonds of the Big Vein Pocahontas Company against the individual members of a bondholders' committee of the company and who were also to act as a reorganization committee of the company, the reorganized corporation and certain trust companies. The substance of the allegations are that Thomas T. Boswell having acquired by lease on March 12th, 1909, rights in coal lands in Tazewell County, Virginia, organized the Big Vein Pocahontas Coal Company on March 25th, and on the 14th of April conveyed to this corporation the rights which he had acquired under the lease. The coal company then executed a mortgage, dated May 1st, 1909, to the Colonial Trust Company to secure an issue of $400,000.00 of bonds, of which 212 were subscribed for, 63 hypothecated and 125 were never subscribed for nor issued. Default having been made in the conditions of the mortgage, proceedings were taken in the Circuit Court for the Western District of Virginia on the 28th of October, 1910, under which E. P. Keech, Jr., and Harry H. Heiner were appointed receivers. The bill further charges that an agreement under date of November 2nd, 1910, was entered into by a large number of the bondholders and Merville H. Carter, Frederick H. Hack, John G. Krug, Thomas T. Boswell and Michael Sheehan, as a bondholders committee. The agreement is set out in full. By the terms of this agreement the bonds were to be deposited with the Colonial Trust Com-

pany and all of those issued were so deposited, except four held by James T. Doyle. The plaintiff, The First National Bank of Pocahontas, which owned fourteen, and the plaintiff, Andrew C. Snyder, who owned twelve bonds were among those who made such deposits. It is further alleged that a decree was passed by the Virginia Court in the proceeding in which the receivers had been appointed, for a sale of the property of the Coal Company and that it was sold on December 31st, 1914, to Elmore B. Jefferey, who had been selected to do the bidding for the bondholders' committee, for the sum of $356,000.00 and that certain of the members of the bondholders' committee made an agreement with and sold the property of the coal company to a corporation, called "The Organization Company" for the sum of $356,000.00. Certain of the members of the committee then by resolution directed the Colonial Trust Company to deliver all of the bonds which had been deposited with it to Elmore B. Jeffery, under an agreement with him that as soon as the sale was ratified all of the property should be turned over to the Big Vein Pocahontas Company, a corporation which had been formed in Virginia with a capital stock of $3,500,000.00. The payment to Jeffery for the property so purchased was to be made $300,000 in stock of the Big Vein Company and the balance, $350,000 in bonds of the same company. These bonds were to be of two classes, designated as "A" and "B" and the sum of $30,000 per annum was to be set aside as a sinking fund for the redemption in five years of the bonds of class "A." Some of the "A" bonds were to be sold and the proceeds used for the payment to various persons (not named in the bill, nor the reason given why payments were to be made to them) and that the bonds of both classes might be exchanged for an additional series, which were to be secured by a deed of trust on property belonging to the Fairmont and Buchanan Coal Company, which property was to be acquired by the Big Vein Pocahontas Company. The bill proceeds to allege in the fifteenth paragraph that the agreement made with the Organization Company was null and

void for the reason that Thomas T. Boswell, one of the committee was not notified of the meeting, nor present at it, and that the agreement provided for the purchase of a large quantity of unproductive coal property for the price of $600,000 on which there was to be an annual interest charge of $30,000; that this property was some twenty or twenty-five miles from a railroad, and that the cost of construction of a railroad would necessitate a very large outlay. The bill further alleges that it was represented to the bondholders, and that the bonds were deposited with the Colonial Trust Company upon the faith of the representation that the powers and duties of the committee related only to the purchase of the Big Vein Pocahontas Coal Company property, and that the bonds would not have been deposited had the bondholders been apprised of the intention to purchase the Fairmont and Buchanan property. The twentieth paragraph alleges that the action of the members of the bondholders' committee in entering into the agreement with the Organization Company and the Fairmont and Buchanan Company was illegal and void and will constitute a fraud on the plaintiffs. The bill concludes with numerous prayers for injunction of several kinds against one or another of the defendants.

Most of the defendants named in the bill answered, but subsequently asked leave to withdraw their answers and demur. This was refused. The plaintiffs then asked leave to amend the bill, and permission having been given, amended by striking out from the fourth prayer of the bill "that the agreement between the Bondholders' Committee and the Fairmont and Buchanan Coal Company be declared null and void"; and by adding two additional prayers. As soon as these amendments were made the defendants demurred; the Circuit Court No. 2 of Baltimore City overruled the demurrer, and the present appeal was taken.

The first question which has been pressed upon us is whether the plaintiffs are entitled to have matters set forth in the answers to the original bill considered by the Court in

aid of the amended bill. The amendments made to the original bill were slight, set forth no new or additional fact to those averred in the original bill, and were a modification of the original bill only as to the relief asked. But their condition can not change the rule in regard to pleading. It is not the extent of the amendment made to the pleading which determines the rule to be applied; it is the fact that an amendment has been made, and when this modification of the bill has been effected with leave of the Court it supersedes that for which it is substituted, and becomes for the purposes of the case the only pleading of the plaintiffs; the former answers, unless adopted as answers to the amended bill, are out of the case, and therefore improper to be considered in determining the sufficiency of the bill.

The defendants rest their demurrers upon two grounds: (1) lack of proper and necessary parties, and (2) a failure of the amended bill to disclose a sufficient cause of complaint to entitle the plaintiffs to maintain the action. Reliance as to the first of these reasons is placed upon the fact that the bill does not in terms make the Fairmont and Buchanan Company a party to the proceedings, nor pray either process or publication against it. It was the omission to do this which made proper and necessary the amendment of the fourth prayer of the original bill. It has been frequently held that all persons materially interested in the subject-matter of a litigation ought generally to be made parties to the suit; *Arkansas S. E. R. R. Co.* v. *Union Saw Mill Co.*, 154 Federal, 304. Sometimes they are described as necessary, sometimes as indispensable. But there is a limitation upon the extent to which the doctrine can be carried. Unless the proceeding be one *in rem*, there must be something in the nature of privity between the parties. And this is the vulnerable spot in the defendants' contention on this point. No contract or agreement is alleged in the bill by which the bondholders' committee or any members of it entered into any binding obligation with the Fairmont and Buchanan Coal Company.

The nearest approach to it is found in paragraphs fourteen and twenty. In the former of these it is said that the property of the Fairmont and Buchanan Coal Company "is to be acquired" by the Big Vein Pocahontas Company, but whether it is to be secured directly from the Fairmont and Buchanan Company or from the Organization Company, or some other corporation or individual, does not appear. In the twentieth paragraph the allegation is that the action of certain members of the bondholders' committee "in entering into the agreement with the Fairmont and Buchanan Coal Company burdening the property of the Big Vein Pocahontas Coal Company with the purchase of said unproductive and isolated property" is illegal and void. But here also there is no allegation that the agreement for the purchase was made with the Fairmont and Buchanan Company, and by the amendment to the bill the prayer that this alleged agreement might be declared null and void was stricken out, so that no relief whatever was asked against the Fairmont and Buchanan Company and no relief being asked against it, it ceased to be a necessary party.

Does the bill disclose a condition of facts sufficient to entitle the plaintiffs to a standing in a court of equity? The allegations of the bill have been stated at some length, so that it is unnecessary to repeat them. The question now to be considered is the nature and extent of the powers of the bondholders' committee. These are to be sought not in any statute or rule of the common law, but in the instrument under which they undertook to act on behalf of the bondholders. They must be held to be invested with all the powers enumerated in that instrument together with such incidental powers as may be requisite to enable them to carry out those express powers. The agreement with the bondholders was both a definition and limitation of their powers. These are set forth with fullness and precision in the first, second and fifth clauses of that agreement, as follows:

"First—The Committee are hereby invested with full title to said bonds and coupons, and with all the rights and powers of the Depositing Bondholders as owners or holders thereof, individually and collectively. The Committee are fully authorized and empowered in their discretion to take or institute proceedings, or to cause the same to be taken or instituted, and to maintain and prosecute the same, and to make all such requests upon, and to give all such directions, to the Trustee under the mortgage or deed of trust securing said bonds and to execute all such contracts of indemnity and such other papers and instruments in writing, and to do or cause to be done all such other acts and things as may be necessary or expedient for the foreclosure of the lien of said mortgage or deed of trust, for the protection of any interest of the holders of the bonds thereby secured, or for the enforcement of any right or remedy conferred upon the holders of said bonds by the terms of said mortgage or deed of trust by law, or as may be to the best interest of the said depositing bondholders."

"Second—The Committee shall have power to bid for and buy in the property and franchises of the Company at any receiver's foreclosure or other sale for the enforcement of the lien of the mortgage or deed of trust securing said bonds, and shall have power to organize or cause to be organized a new corporation to take over, hold and operate the same, which new corporation shall have such capitalization, that is to say, capital stock, common or preferred or both, and bonded debt, as the Committee may deem wise or find it necessary. The Committee shall have the right to use the bonds deposited hereunder or the dividends payable thereon for the purpose of making payment, in whole or in part, for the property and franchise so purchased, and shall give, return and accord to the depositing bondholders the securities of said new corporation in such amounts, and of such character, kind and relative priority or priorities as the Com-

mittee shall deem and consider to be fair and adequate, having regard to the sound financial and legal reorganization of the property, finances and affairs of the present Company, and the interests therein of the depositing bondholders, but without preference or priority of any bond deposited hereunder as against any other bond so deposited.

"The Committee shall have power to pledge, mortgage and convey the property and franchises, so purchased, as security for the payment of such sum or sums of money as they shall deem expedient to borrow or obtain upon the security thereof, for the purpose of paying, in whole or in part, the purchase price thereof,. or of paying or discharging any claim or that which has or constitutes a lien on the property and franchises of the company prior to the lien of the mortgage or deed of trust securing said bonds, or of providing an adequate working capital for the new corporation so organized, or for any other purpose appurtenant to or connected in any wise with any one or more of said purposes, and wise or expedient in the judgment of the Committee, including the costs and expenses as herein elsewhere specified."

"Fifth—The Committee shall have power to incur debts for any proper purpose connected with this agreement and the protection of the interests of the depositing bondholders under the terms hereof, or for purchasing any claims or debts due or owing by the Company, which have or constitute liens upon its property and premises prior to the lien of the mortgage or deed of trust securing said bonds, or the payment of which is necessary to the protection or continued operation of said property and premises, and to pledge as collateral for any such sums of money borrowed or debt incurred, the bonds then deposited or which may thereafter be deposited hereunder. And the Committee shall have power in their discretion to consent and agree that any sum or sums of money borrowed by the receivers of said property and represented by the

written obligations of said receivers, shall be given, made and constitute liens upon said property and premises, prior to the lien of the mortgage securing said bonds, as far as the depositing bondholders have power to authorize such postponement of lien or to the extent of their interest in the same. But no depositor of bonds shall incur any personal responsibility for any loan made by the Committee in pursuance of the powers hereby conferred upon the Committee."

The bondholders' committee was thus constituted at the same time a reorganization committee for the Big Vein Pocahontas Coal Company. The general plan to be pursued is perfectly plain notwithstanding the somewhat elaborate verbiage. The plant and property of the Pocahontas Coal Company was to be put up for sale and bid in on behalf of the bondholders of that company, to be turned over in due season to a corporation to be formed. This was to be capitalized in stocks and bonds for such sum as should suffice to discharge the bonded debt of the company and provide a working capital for the reorganized company. There is nothing in the agreement to suggest that there was to be acquired in addition other property, far exceeding in estimated value the property of the Pocahontas Coal Company, and that the fixed charges were to be more than doubled in order to carry this additional property, which was not returning any revenue.

The duties and obligations of the members composing a bondholders' committee are perfectly clear. They are in the highest degree of a fiduciary nature, far more so than the directors of a corporation, though in *Booth* v. *Robinson,* 55 Md. 429, such was held to be the nature of the responsibility of directors; and were so held in *Mawhinney* v. *Bliss,* 117 N. Y. App. Div. 255. It is not a question whether they acted in good or bad faith, it is solely a question of what powers were entrusted to them. *Peoria & E. Ry. Co.* v. *Cos-*

*ter,* 97 Fed. 519; *Cox* v. *Stokes,* 156 N. Y. 491; *United Water Works Co.* v. *Omaha Water Co.,* 164 N. Y. 41.

The agreement with the bondholders set the limit to their powers. If they had the power to modify or dispense with it in one particular, they had power to disregard it in every particular, and to enter into a new and wholly inconsistent contract without the consent of the bondholders for whom they were acting. They could thus set aside and subvert the very instrument which was the source of all their power— *Cox* v. *Stokes, supra.* Such a committee is of necessity to be held to the most strict accountability, and in construing the terms of such an agreement the construction to be placed upon it is that most favorable to the bondholders. *Industrial Trust Company* v. *Tod,* 180 N. Y. 215. Such being the law applicable to a case of this character, the Judge of the Circuit Court No. 2 committed no error in overruling the demurrer, and the order appealed from will be affirmed.

*Order affirmed, with costs.*