## HOOK *v.* PAYNE.

1. In a suit in the Circuit Court of the United States by a distributee of the estate of a decedent to recover a distributive share, the mere fact that the administrator is ordered to account before a master does not make parties all who were entitled to distribution, nor authorize a decree in their favor.

2. If such persons do not appear before the master no decree can be made for or against them, because they would not be bound thereby.

3. If they should appear and claim an interest, if there are controverted matters between them and the administrator outside of the mere accounting to be made by him, this can only be decided on proper pleadings and regular hearing by the court.

4. A bill which seeks to set aside a fraudulent receipt obtained by an administrator from one distributee, and to recover the amount coming to that distributee, is not a suit in which all other persons interested in the estate can be heard unless they are made parties, or make themselves parties to the suit in some appropriate mode.

5. In a State where the law allows ten per cent. per annum interest, a decree will not be reversed, because it allows against a fraudulent administrator eight per cent. interest with annual rests.

APPEAL from the Circuit Court for the District of Missouri; the case being thus:

Ann Payne, a citizen of Virginia, filed a bill in chancery in the Circuit Court of the United States for Missouri, against

Zadok Hook and others, citizens of the State of Missouri. Hook had acted as administrator of the estate of one Curtis, and the other defendants were sureties on his official bond, and the object of the bill was to assert the right of the complainant, as one of the heirs of Curtis, to an account and a distribution of the assets in Hook's hands. But she had received of Hook a certain sum of money, in consideration of which she had signed a paper which might be called either a release or assignment to Hook of all her interest in the estate of which he was administrator, and she charged in her bill that this instrument had been procured by fraud, and prayed to have it set aside and held for naught. She also charged that certain settlements made by Hook with the County Court, which had probate jurisdiction of such matters, were fraudulent, and she prayed that they be restated, and she alleged that she was entitled to one-eighth part of the estate of the said Curtis on final distribution, and prayed that on a fair statement of the administrator's account a decree be rendered in her favor for the one-eighth of the sum found in his hands subject to distribution.

Susan Curtis and Mary Gwinn, each of whom held a like interest with Ann Payne in the estate, had signed the same paper, and each of them brought a similar suit to that brought by Ann Payne, in the same court, and though the bills in these cases were not in the record, it was conceded that except in the name of the complainants they were identical with that of Ann Payne. These suits were consolidated before answer, by order of the court, and were treated in the subsequent proceedings as one case.

The defendants answered, and the court made an interlocutory decree setting aside the release given by the complainants and the settlements made by Hook with the County Court, and appointed a master to state an account with Hook as administrator, and he was directed to inquire what other persons were interested in the estate besides the complainants, and to report what payments, if any, had been made to them, and what was due to them, respectively, at the date of the report.

.The report of the master seemed, as this court considered, to have been based upon diligent inquiry and accurate information, and if the principles on which it is founded were sound, there seemed to be no reason to question the facts on which it proceeded.

It charged the administrator with interest on all that came to his hands at the rate of 10 per cent. per annum, with annual rests. It reported the names of all who were entitled to distribution, which the master believed he had correctly ascertained. He said that some of these appeared before him, either in person or by attorney, and claimed their rights in the estate, while others did not, and he gave the names of those who did and of those who did not. He reported that, as to some who appeared, they had given releases similar to those given by the complainants, and that, though this was shown, he disregarded them, and allowed their interest as though the releases were void, and ascertained and reported what was due to each distributee, whether appearing or not. The final decree modified the report by substituting 8 per cent. per annum as the rate of interest, and confirmed it in all other respects, and made a final decree distributing the estate according to the report, and ordering Hook to pay to each person the specific sum found due, with interest from the date of the report. On the subject of the annual rests, and as a ground therefor, it appeared that nearly all the bonds and notes belonging to the estate bore 10 per cent. interest, which was collected by Hook, who failed to charge himself with the interest received; that he had used the money of the estate in trade and speculation; buying and selling gold, discounting paper, and lending it at full interest. In answering the bill, too, and in giving testimony, he dealt mostly in generalities, when positive information was called for. He could not tell when he made collections, nor in what amounts; "paid no particular attention;" lent the money "from time to time;" but to whom he lent it, in what amounts, when the money was collected, and how long he kept it on hand, or when he re-lent it, he did not state, but said he had kept no accounts by which he could answer

these questions. He admitted that he had deposited the trust money with certain bankers named, but he did not produce his deposit books, because, as he said, his private funds were mixed up in the accounts; to what amount he could not remember. His loans and deposits of the estate's money were in his own name, excepting one loan. On the other hand he attempted to prove by sundry witnesses that in their opinion money could not have been lent at certain times during the war at all.

The case coming here many objections were taken to the decree, among them two, much insisted on:

1st. That the court had disposed of the rights of parties who were in no kind of way actually or in contemplation of law before it.

2d. That the rate of interest was too high, and that the case was not one for rests.

*Mr. J. B. Henderson, for the appellants; Messrs. Glover and Shepley, contra.*

Mr. Justice MILLER delivered the opinion of the court.

1. We are of opinion that all that part of the decree which attempts to settle the rights of the parties, who were neither plaintiffs nor defendants in the original suit, must be reversed.

We do not propose, in this case, to lay down any precise rule on the subject of adjusting administrators' accounts in the Federal courts, or how far certain persons, not made parties in the original suit, or incapable of being made parties by reason of their citizenship, may or may not come in before the master, on a general accounting, and protect their rights; nor do we intend to go into that question.

In the case before us persons representing a considerable interest in value have not appeared at all. As to them we hold it to be clear that they cannot be bound by the decree rendered in this case, and they have an undoubted right to bring such a suit or institute such other proceeding as the law authorizes for the assertion of their rights, notwithstanding this decree.

It follows from this also, that as they are not bound by it, so Hook, the administrator, cannot be bound by a decree which does not bind them as to any rights to be controverted between them and him.

It is also equally clear that if Hook had paid money to any other parties who did appear before the master, and had made a purchase of the interest of these parties in the estate, that purchase could not be set aside and held for nought without such adversary proceedings between them and Hook as would give him a fair hearing on that subject. They should have filed such a bill as the present plaintiffs did, and the question of the fraud should have been heard and decided by the court. It by no means follows that because the court, on full hearing, set aside his purchase of Ann Payne, that the master could without pleading or trial assume that all other purchases were equally fraudulent.

Another reason for this may be found in the nature of the original bills. Although there are three of them there is no attempt to make the other distributees parties, nor do they make each other parties to their separate bills. They are each framed on the basis of setting aside the release executed by them, in which no other distributee had any interest, and each claims for herself the one-eighth to which she is entitled, without any prayer for general accounting or general distribution. The consolidation then of these cases does not change this feature of the relief sought, and the ground of that relief, namely, the fraud in obtaining the release.

These bills are obviously not framed on any theory of a final settlement of the estate and distribution among all entitled. They are merely brought to obtain for each plaintiff the special relief from the fraudulent release and the specific sum of money due to each from Hook, and on this theory it is that counsel brought three separate suits instead of one.

For these reasons we are of opinion that the only relief to be administered in this case is that in favor of the three complainants.

2. It is strongly urged upon us that the account stated against the administrator is too hard to be justified, in refer-

ence to the interests, both as regards the rates charged and the annual rests.

The laws of Missouri allow a conventional rate of interest not exceeding ten per cent. The master stated the account on that basis, but the court below, on mature consideration, reduced the rate to eight per cent., and we are not disposed to disturb that decision. The *annual* rest is one which can hardly be sustained in a case of honest administration unless it be shown that the amount so ascertained was actually received. But there are circumstances in this case which seem to justify the decree of the court so far as to disincline us to interfere with it on that point. The administrator is shown to have mixed the funds with his own, and to have used them for puposes of speculation for his own profit. The assets for which he was held accountable were almost exclusively notes due the intestate, bearing ten per cent. interest and collected by the administrator. In his settlement with the County Court he rendered no account of the interest received on these notes, nor any interest account for the use of the money after it came to his hands. Nor of the profits made by him by its use in his own business transactions. He is shown to have made private arrangements to settle separately with the distributees or to buy out their interests, and these have been shown to be accompanied with fraud and without any fair statement of the condition of the estate, and he kept no separate account of the trust funds in his hands. Under such circumstances we are of opinion that he should be held to account for all that he might have made by the use of the money, and as the master and the Circuit judges have held that he might have invested and reinvested annually, at eight per cent., we will not disturb their finding.

The decree in favor of Ann Payne, and Susan Curtis, and Mary Gwinn, is AFFIRMED, and the decrees in favor of the other parties are REVERSED, and the case remanded to the Circuit Court with directions to dismiss the case as to them without prejudice. And that each party pay their own costs of appeal.