JOHN L. PETERMAN *et al.*

*v.*

THE UNITED STATES RUBBER COMPANY *et al.*

*Opinion filed June 14, 1906.*

1. APPEALS AND ERRORS—*when appeal from order disallowing a part of claim does not bring up other part.* An appeal by executors to the circuit court from an order of the probate court disallowing certain credits in their report, including one divisible item, which the probate court properly separated into two items, allowing one and disallowing the other, does not authorize the circuit court, nor the Appellate Court upon further appeal, to determine the correctness of the probate court's action as to the item allowed. (*Marshall v. Coleman,* 187 Ill. 556, distinguished.)

2. SAME—*appeal from disallowance of item involves question of interest.* An appeal by executors from an order disallowing a certain item of credit authorizes the court of review to pass upon the question whether or not interest should be charged upon such item.

3. EXECUTORS AND ADMINISTRATORS—*executors are liable for losses on unsecured time sales.* Executors who continue the commercial business of the testator for the purpose of closing it out are liable for any loss to the estate by reason of their making unauthorized sales on credit and without security, even though, on the whole, the estate may have been benefited by the manner in which the business was closed out.

4. SAME—*when executors should be charged with interest.* Executors are properly chargeable with interest upon a disallowed item of their report representing money actually in the hands of the executors and paid by them to one of the executors without authority of law.

5. SAME—*when executors should not be charged with interest.* Interest upon uncollected accounts for merchandise sold by the executors in an endeavor to close out the testator's business for the best interests of the estate, the net result of which action was probably beneficial to the estate, should not be charged to the executors, even though they acted without an order of the court.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

STEELE & THOMPSON, and CHARLES LANE, for plaintiffs in error.

ISHAM, LINCOLN & BEALE, for defendants in error.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

On February 14, 1900, the probate court of Cook county passed upon the final report of John L. Peterman, Alfred R. Edwards and Ellen M. Preston, as executors of the last will and testament of E. B. Preston, deceased, charging the executors with $5055.15, part of an aggregate item of $9839.47, allowing the executors credit for $4784.32, the remainder of the said aggregate item, and refusing to charge the executors with interest on the said item of $5055.15 or to charge them with interest on another item of $1453.83. The rulings of the probate court on other items of the report in question are not involved in the assignment of errors and cross-errors in this court and need not be stated in this opinion. The executors prayed and were allowed an appeal to the circuit court, and the cause was treated in that court as a proceeding in chancery, and was referred to the master in chancery to take and report the evidence together with his conclusions of law and fact. The master made his report accordingly, and the circuit court, on January 13, 1904, rendered a final decree following the judgment of the probate court in all the particulars above mentioned. This decree was questioned in the Appellate Court both by appeal and writ of error,—by appeal on the part of the United States Rubber Company and Meyer Rubber Company, creditors; by appeal of John L. Peterman and Alfred R. Edwards, as executors; and by writ of error on the part of Ellen M. Preston, who was co-executor with Peterman and Edwards. The three causes were consolidated in the Appellate Court and heard together. The Appellate Court affirmed

the judgment of the circuit court in all respects, except as to the failure to charge the executors with the said item of $4784.32 and with interest on the said item of $1453.83, but reversed the judgment of the circuit court for such failure and remanded the cause, with directions to charge the executors with those two items. A writ of error has been sued out of this court in the names of the plaintiffs in error to reverse the judgment of the Appellate Court, and Peterman and Edwards, as executors, have assigned for error the affirmance of the decree of the circuit court charging the executors with the said item of $5055.15, the reversal of the decree of the circuit court so far as it fails to charge the executors with the said item of $4784.32, and the reversal of that decree so far as it fails to charge the executors with interest on the said item of $1453.83. The defendants in error, United States Rubber Company and Meyer Rubber Company, have assigned for cross-errors the judgment of the Appellate Court ordering the costs in that court to be paid out of the funds of the estate, the order affirming the decree of the circuit court that one-third of the costs in that court be paid out of the funds of the estate, and the order affirming the decree of the circuit court so far as it fails to charge the executors with interest on the said items of $5055.15 and $4784.32. No other errors or cross-errors having been assigned, these are the only questions before this court for consideration.

*First*—The probate, circuit and Appellate Courts have charged the executors with the item of $5055.15. In order to determine whether or not this is erroneous, an inquiry into the facts becomes necessary.

At the time of the death of E. B. Preston, on April 27, 1895, he was engaged in an extensive business in Chicago conducted as four departments, including, among other things, the sale of leather and cotton hose, rubber belting, tubing and other rubber goods of the same class, the sale of rubber boots, shoes and other merchandise, the manufacture

and sale of fire extinguishing apparatus, and the manufacture and sale of the Czar bicycle. There were about one hundred and fifty employees in these departments, and the pay-roll amounted to about $2000 a week. There was unfinished stock on hand which could not be sold to advantage in its unfinished condition. In the bicycle department there were 397 frames, but the requisite tubings, rims and wheels were not in stock, and it was necessary to purchase material, finish the wheels, and thus put them into marketable condition or else sell them at a considerable sacrifice.

After the death of E. B. Preston, the executors, without any order of the probate court, continued the business, but for the sole purpose of finishing the unfinished stock and rendering the same marketable, and in accomplishing this bought necessary material and sold the finished products through the ordinary channels of trade. The bulk of the property was thus disposed of by the executors within six or seven months after the death of Mr. Preston. The sales were private, not public, and were without the authority of an order of the probate court. There is evidence tending to show that the executors, in carrying on the business and making these sales, were acting upon the advice of reputable counsel, and that the judge of the probate court was cognizant of what was being done, tacitly approving the course taken by the executors. The evidence shows that the executors acted in good faith, adopting the course which they believed would be most advantageous to the creditors. As a result of the management of the estate in the manner above indicated the property was sold for considerably less than its appraised value. Witnesses testified, however, that the shrinkage on this property, if the same had been sold in its unfinished condition, would have been from thirty-three and one-third to fifty per cent. It is probable, in view of all the evidence, that the net result of the sales as made was larger than the amount which would have been realized if the property had been sold by the executors in the usual way, even

after taking into consideration the bad accounts made by the executors in closing out the business.

The item of $5055.15 is made up of many items, representing sales made by the executors on time and without taking security, these accounts turning out to be uncollectible and these amounts being lost to the estate. There is no special excuse shown for the sale of these goods on time without taking security. The fact that goods may be sold for more upon such terms than where sufficient security is exacted constitutes no excuse whatever. Even if the executors had been justified in continuing the business without an order of court, for the purpose of closing it out, it is certain that they acted without authority in selling the goods on time without taking security, and that they are responsible for any loss to the estate by reason of their delinquency in so doing. *Curry* v. *People,* 54 Ill. 263; *Bowen* v. *Shay,* 105 id. 132.

It is urged, however, that the real question is whether or not, upon a balance being struck, the general net result is advantageous to the complaining creditors. It is said that if the estate has been benefited on the whole, the executors should not be charged with losses for not taking security as to particular items. The argument is fallacious in assuming that all the executors have to do, even where they act in disregard of the requirements of the statute, is to have a care for the general final result; that if they succeed in making something for the estate in part of the transaction they may proceed negligently or unlawfully as to the other part without becoming responsible for losses, provided the total profits in the outcome exceed the total losses. But this is an unwarranted assumption. It would be very unwise to relax the rule that if the executors sell on time without taking security they should be held responsible for the result. Even though the estate may have derived a profit from certain sales so made, that is no reason why the estate should be made to suffer corresponding loss on other sales. For these

reasons the executors are properly chargeable with the item of $5055.15.

*Second*—The item of $4784.32 relates to Czar wheels sold Porter & Gilmore by the executors, also on time and without taking security.

It appears that Porter & Gilmore were indebted to E. B. Preston, at his death, in a sum at least equal to the item of $4784.32, the said firm being then insolvent; that sales were made by the executors to that firm after E. B. Preston's death, and that while these sales were being made the firm paid the executors moneys equaling the amount of the said item. In the absence of any direction from Porter & Gilmore the executors could have applied these payments to the satisfaction of the account for sales made by themselves, leaving the old account unsatisfied. But the book-keeper of the executors applied the payments upon the old account. If this error in book-keeping had not been made the old account would remain unsatisfied and the account for sales by the executors would be liquidated, and the executors would not be responsible for any loss in the transaction. It is contended on the part of the creditors that the executors are bound by the application of the payments made by their book-keeper, and should be charged with the item known as the Porter & Gilmore account. We deem it unnecessary to pass upon this question, however, for the reason that no appeal was taken from the order of the probate court allowing the executors credit for the Porter & Gilmore account, and the circuit and Appellate Courts had no authority to consider or pass upon that item.

The aggregate item of $9839.47 was divided by the order of the probate court into the two items of $5055.15 and $4784.32, the executors being charged with the first and credited with the second, the effect of which was to treat the aggregate item as if it were two separate items instead of a unit. There is no doubt that if the executors had placed these two amounts in different paragraphs in their report,

assigning them different numbers, an appeal from the disallowance of one of them would not have brought the other before the circuit court for consideration. (*Morgan* v. *Morgan,* 83 Ill. 196; *Millard* v. *Harris,* 119 id. 185; *Henning* v. *Eldridge,* 146 id. 305.) The same effect was produced when the order of the probate court separated the aggregate item into the two items in question, and charged the executors with the sum of $5055.15 as one item and credited the executors with the item of $4784.32 for merchandise sold Porter & Gilmore, treating the latter as a separate item by finding "that said executors should not be charged with said item, as the same was offset by cash payments of a larger amount which were applied on the old account against said debtors which accrued in the lifetime of said Preston."

It should be stated that the probate court specifically disallowed and charged back to the executors ten items, amounting, in all, to $12,077.82, among which items are specified the item of $5055.15 and an item of $1453.83 hereinafter considered, but in which specification the item of $4784.32 was not included. The appeal by the executors from the order of the probate court was from the refusal of that court "to allow the said executors the sum of $12,077.82, for which credit was claimed by said executors in an account filed in said court for disbursements claimed to have been made by said executors in the management of said estate." It is manifest, therefore, that the executors did not appeal from the order crediting them with $4784.32. If the executors had abided the result in the probate court and the creditors had appealed from the order crediting the executors with the Porter & Gilmore account, there is no doubt that the creditors would have been entitled to an order for the distribution of the amount on hand as to which no appeal had been perfected or was pending, including the said item of $5055.15. (*Curts* v. *Brooks,* 71 Ill. 125.) Why? Because the appeal by the creditors from the order as to the

one item would not have brought the other before the circuit court for review. To hold otherwise in such case would be to give the executors a right which they were not asking, and which they should have sought by appeal if they were desirous of further contesting their liability as to that item. The same rule should be applied where the creditors abided the result in the probate court and the executors appealed as to those items only with which they were charged by that court.

But it is said that this case is controlled by *Marshall* v. *Coleman,* 187 Ill. 556, holding, as it is alleged, that if a part of a single claim by an administrator is allowed and a part rejected, upon an appeal by the administrator from the order disallowing a part the allowance of the other part may be passed upon by the appellate tribunal under an assignment of cross-errors. A careful examination of the *Marshall case* does not show any inconsistency between the holdings in that case and the views expressed in this opinion.

In the *Marshall case,* Marshall's administrator paid to Goodner's administrator $3500, which would have been divided, on distribution, between Goodner's two heirs, one a sister of the whole blood and the other a sister of the half blood. If there had been but one heir the whole of the amount would have gone to that heir, or if the estate had been insolvent the whole might have gone to the creditors. Manifestly, therefore, the item was in its nature a single item, no matter how it might have been disposed of on distribution of Goodner's estate. Through collusion and fraud on the part of the two administrators Marshall's administrator obtained an order from the county court requiring Goodner's administrator to refund the said sum of $3500, and the same was refunded accordingly to Marshall's administrator. On final settlement of Goodner's estate his administrator asked credit for the item of $3500 so refunded, but the county court disallowed the claim and charged the administrator with the whole amount. The administrator

appealed to the circuit court, and that court charged the administrator with the half of the amount which would have gone to one heir on distribution and credited him with the other half. This order was affirmed by the Appellate Court on appeal by the administrator, and on further appeal by the administrator to this court it was urged that the correctness of the ruling of the circuit court that the administrator should be credited with half of the amount could not be questioned on cross-error by the heir who would have received that half on distribution. But this court said that the "item was one and not divisible;" that is to say, that the item, whether actually divided or not, was not in its nature susceptible of division; that the item was one in the administrator's report and that exceptions were filed to that particular item; that the order of the county court charged the administrator with the whole amount, and that the allowance of a part of it instead of the whole (in the circuit court) did not split this item (which was one and not divisible) into two claims.

In the case now before us the aggregate item was divisible. It was not for a single amount fraudulently refunded by one estate to another, but was made up of separate and distinct accounts owing by different individuals or firms, for which the executors were seeking credit, and should have appeared as separate items in the report of the executors. The fact that the executors grouped the items into one aggregate item did not make them one item "and not divisible," and when the probate court separated the aggregate item into two parts, properly regarding the Porter & Gilmore account as a separate item, crediting the executors therewith while charging them with the remainder of the aggregate item, the effect was to make two items of the aggregate item, and an appeal from the order as to one of these did not bring up the order as to the other for review.

*Third*—The other errors and cross-errors assigned may be disposed of with very brief notice. The executors al-

lowed Peterman, himself one of the executors, $1453.83 for services rendered in carrying on the business after the death of E. B. Preston. The probate court charged the executors with this item, and the executors included this item in their appeal to the circuit court: The question of charging or not charging interest upon the item was necessarily incident to the question of the allowance or disallowance of the item itself, and the appeal by the executors from the disallowance of the item authorized the circuit court to consider the question as to whether or not interest should be charged on this item. This question of interest was therefore properly before the circuit court, and afterwards before the Appellate Court on appeal, and the Appellate Court correctly held that the executors were chargeable with interest on this amount at the rate of ten per cent per annum, beginning at the expiration of two years and six months after the date of the letters testamentary. There was no error in the decree of the circuit court in requiring one-third of the costs to be paid out of the funds of the estate, as this question was within the reasonable discretion of the court, and that discretion was not abused. Neither did the Appellate Court err in ordering the costs of that court to be paid out of the funds of the estate, or in holding that the executors should not be charged, under the circumstances of this case, with interest on the said item of $5055.15. As to the item of $1453.83, interest is properly chargeable for the reason that this item represents moneys actually in the hands of the executors paid by them to one of their own number without any authority of law. But the item of $5055.15 represents uncollected accounts, and not moneys in the hands of the executors, and these accounts were made in a manifest endeavor on the part of the executors to sell the property for the best interests of the estate, where the aggregate final result was probably beneficial to the estate. The difference in the circumstances justifies the difference in the holdings of the Appellate Court as to interest on these two items.

The judgment of the Appellate Court is reversed in so far as it requires the executors to be charged with the said sum of $4784.32 and is affirmed in all other respects, and the decree of the circuit court is reversed in so far as it fails to charge the executors with interest at the rate of ten per cent per annum upon the said sum of $1453.83 and is affirmed in all other respects, and the cause is remanded to the circuit court with directions to render a decree in conformity with the views herein expressed.

*Reversed in part and remanded, with directions.*