Sherman S. Jewett and Another, as Executors, etc., of Grace H. Jewett, Deceased, Plaintiffs, Impleaded with Clara Du Bois and Others, Appellants, *v.* Commonwealth Bond Corporation, in Its Corporate Entity, and as Committee for the Holders of First Mortgage Six Per Cent Serial Gold Bond Certificates Issued under a Trust Agreement between the Ellda Corporation and the American Trust Company of New York, as Trustee, and Others, Respondents, and Ellda Corporation, Defendant.*

First Department, May 4, 1934.

\* Revg. *sub nom. Bank of Manhattan Trust Co.* v. *Ellda Corp.* (147 Misc. 374).

*John A. Brough* of counsel [*William West Shaw* with him on the brief; *Blandy, Mooney & Shipman,* attorneys], for the appellants.

*Francis D. Higson* of counsel [*Jones, Clark & Higson,* attorneys], for the respondent Commonwealth Bond Corporation.

*Bernard Sobol* of counsel [*O'Brien, Boardman, Conboy, Memhard & Early,* attorneys], for the respondents Bank of Manhattan Trust Company and The Harriman National Bank and Trust Company.

TOWNLEY, J. This action is brought on behalf of the plaintiff bondholders and all other similar holders of first mortgage bonds issued by the Ellda Corporation to the American Trust Company as trustee (now merged with the Bank of Manhattan Trust Company). The relief sought is the recovery of bonds delivered to the Commonwealth Bond Corporation (hereinafter called the defendant), a declaration that the plans of refinancing proposed under date of January 6, 1932, be declared void, the removal of the defendant as committee because its proposed plans of reorganization are detrimental to the interests of its *cestuis que trustent,* and the appointment of a substitute committee or trustee.

Defendant is a Delaware corporation authorized to do business in this State. Under section 212 of the General Corporation Law a foreign corporation so authorized is limited in its business activities to the matters set forth in the statement and designation filed with the Secretary of State. The objects of the defendant corporation so set forth in this case were " to do a general mortgage loan business; that is, lend money upon first mortgages upon real estate."

Defendant originally sold the bonds involved in this suit to the public. They covered participations in a mortgage on the Elysee Hotel on East Fifty-fourth street, New York city. There were defaults under the mortgage. After these defaults on June 5, 1931, defendant appointed itself a committee for bondholders and entered into a depositary agreement with the Harriman National Bank and Trust Company as depositary. Thereafter, the defendant circularized the owners of the bonds and requested deposits from the holders preparatory to a reorganization. More than eighty-seven per cent of the holders have made such deposit up to date. After plaintiffs made their deposit, they became dissatisfied and demanded the return of the bonds. This was refused except on terms which were unsatisfactory to them. The present suit was then brought. This court directed defendant to furnish plaintiffs a list of the bondholders so far as the defendant knew them so that plaintiffs might be enabled to consult with other bondholders similarly situated concerning the reorganization. The reorganization plan advanced by the defendant was unsatisfactory

to plaintiffs. Shortly before the trial, defendant presented an amended plan of reorganization which was deemed by the learned justice at Special Term to cure all prior wrongful acts of defendant, and plaintiffs were held bound by their original contract of deposit.

On this appeal plaintiffs urge first that the defendant should be removed because as a corporation it is purporting to exercise powers which are not authorized by its certificate to do business in this State. We think that acting as a committee for bondholders in a reorganization is not to be regarded as the exercise of powers collateral to or necessary for the practice of " a general mortgage loan business; that is, lend money upon first mortgages upon real estate." There is nothing in this record to indicate that defendants are even now limiting their activities to carrying out a plan permitted under the statement and designation.

The parties are in dispute as to the exact status of the defendant. Defendant claims to be an agent for plaintiffs and says that this agency is coupled with a contractual interest to which all the bondholders who have deposited their bonds are parties. Defendant further contends that the court is without power to interfere in this contractual relationship. Plaintiffs claim that defendant is a trustee.

There has been considerable doubt in the law hitherto as to the precise status of a bondholders' committee. The Supreme Court of the United States has recently definitely decided, however, that such a committee is a trustee and the depositing bondholders are to be deemed *cestuis que trustent*. (*Bullard* v. *Cisco*, 290 U. S. 179.) This determination of the legal relationship of the parties was necessary for the decision of the case, and as a decision of the Supreme Court of the United States it is entitled to great weight by this court in considering a similar situation.

If defendant is to be deemed a trustee in relation to plaintiffs, then it is manifest that it is exercising trust powers enumerated in section 185 of the Banking Law in contravention of the prohibition against such exercise set out in section 223 of the Banking Law. The purpose of these provisions is to prevent encroaching upon the powers of trust companies organized under the Banking Law. A similar exercise of power by this defendant was declared a violation of these statutes in *President & Directors of Manhattan Co.* v. *Silrap Construction Co., Inc.* (Sup. Ct., Kings county, N. Y. L. J. July 19, 1933; affd., 241 App. Div. 686). The decision of this court in *Gifford* v. *Commonwealth Bond Corp.* (237 App. Div. 871) is not to the contrary. The allegations of the complaint in that action were insufficient in various respects to raise the question.

In any event, regardless of whether defendant is encroaching upon the powers of trust companies, the certificate under which it is authorized to do business at the present time is wholly insufficient to permit it to hold itself out as capable of exercising the functions of a reorganization committee. (See Mechem Law of Agency [2d ed.], § 173.)

However, even were the relationship between the parties to be deemed that of principal and agent based on a contract in which the defendant had acquired an interest which could not ordinarily be interfered with by this court, in so far as the non-objecting depositors are concerned, nevertheless, an agent is in a highly fiduciary relationship to the principal and can always be asked to account for its acts. A court of equity will determine the measure of relief from the situation adduced at the trial. If the fiduciary is shown to have been unfaithful to its duties, the court has full power to remove it for the protection of all the *cestuis*. (*Randall* v. *Peerless Motor Car Co.*, 212 Mass. 352, 375; Mechem, *supra*, § 607.)

This record shows that defendant has from the time of the sale of the bonds enjoyed extraordinary privileges accruing to its advantage and to the disadvantage of the bondholders and has made every possible effort either to retain or increase them. Under the original mortgage, the mortgagor was obligated to deposit annually with defendant an amount equal to four per cent of the annual interest on the certificates. As to this sum, the defendant incurred no liability except the duty to credit and apply such of said sums as were demanded by the bondholders to reimburse them for normal Federal income tax which the mortgagor agreed to pay. The mortgage also provided that all insurance should be placed with Hamilton Brokerage Company, Inc., a subsidiary wholly owned by defendant. From the inception of the mortgage, therefore, the defendant was making indirect profit from the property in addition to its normal profit as promoter of the bond issue.

After the default, the defendant took steps to protect its privileged position. The bondholders were circularized and direct representations were made to them that a reorganization in their interest would be made, as follows: " In view of the foregoing, the Commonwealth Bond Corporation as underwriters of the 56 East 54th Street issue believe that the interest of the bondholders can best be served by calling in the bonds for deposit, and with this in mind, a depositary agreement dated June 5, 1931, has been executed by the undersigned as a committee  *  *  *.

" The Commonwealth Bond Corporation regrets the necessity for calling for the deposit of the bonds of this issue, but can see no

reason why holders of bonds should continue to jeopardize or sacrifice any portion of their invested principal by further delay in the matter.   *   *   *

"As we now view the situation, there will be a temporary loss of income, but little or no loss of the principal investment, to bond-holders of this issue.  A plan of refinancing will be formulated in due course and submitted to the bondholders for their approval."

We agree with plaintiffs that the effect of these representations by defendant was to lead plaintiffs to believe that defendant was planning a reorganization solely in plaintiffs' interest.

Thereafter defendant performed certain acts by which its good faith must be tested.  First it took title to the fee of the mortgaged property by arranging a transfer to a subsidiary wholly owned by it.  It then purchased the furniture and furnishings in the hotel for the sum of $80,000 and pledged the bonds deposited with it as security.  Thereafter it proposed its first reorganization plan.  This plan contemplated a foreclosure of the trust mortgage and the organization by the defendant of the new corporation to take title upon the sale.  All of the stock of the new corporation was to be issued to defendant as "management control and as compensation for services rendered."

Defendant without any cash investment was to take title and control of the property together with the furniture and equipment. The capital set up of the new company involved a new first mortgage of $300,000, the proceeds of which were to be applied to the payment of taxes in arrears, the repayment to the committee of such sum as it advanced on account of the purchase price of the property at foreclosure sale, the cost of foreclosure and *other expenses incidental to the refinancing of the issue,* as well as the repayment to the committee of such sum ($80,000) as it advanced for the purchase of the furniture and furnishings now in the hotel, and the balance of the cash, if any, to be distributed among the bondholders.

There was to be a further issue of junior mortgage six per cent income bonds.  This provision of the plan reads as follows: "The new corporation will also issue, upon the order of the committee, and will deliver to the depositing bondholders, a principal amount of 'B' or junior mortgage fifteen (15) year maximum six per cent income bonds for the balance, plus the sum advanced and expended for the purchase of the furniture and furnishings for the hotel; the said balance being the difference between the principal amount of the senior mortgage loan (not to exceed $300,000) and the total amount of the outstanding bonds of the issue ($644,300).  The payment of these 'B' or junior mortgage income bonds will be secured by a second mortgage on the property, as well as a first

mortgage on all of the furniture and furnishings purchased for the hotel.''

By the above-quoted provisions the securities to be issued to the original bondholders were to be reduced by $300,000, in spite of the representations made by the bondholders' committee that "most of these bond issues if properly refinanced would eventually return to the bondholders the full amount of the principal invested."

While the defendant was operating the properties, taking a quit-claim deed, and purchasing the furnishings which cost $280,000 for $80,000, it was issuing monthly statements to the trustee, to inform all parties, as it said, of the progress of the reorganization. The five statements covering a period up to May, 1932, during which time it was soliciting bondholders to deposit their bonds, showed a profit of approximately $14,000. This profit was arrived at by omitting from the statement a management fee of five per cent to be paid to the Commonwealth Management Corporation, another subsidiary of the defendant. This charge should have been included as a part of the expenses of reorganization. It is rightly claimed that bondholders reading these statements would be misled by them and would not understand the true situation.

The trial court refused to receive in evidence or consider the original plan though that was the basis of the present action. The facts on which the plan was based, however, are all before us and it is unimportant whether the plan itself was admitted in evidence or not, since it is a part of the pleadings marked "Exhibit D" and attached to the complaint. The provisions of the original plan were most relevant and material on the question of the fitness of defendant to carry out the reorganization which it had undertaken.

Shortly before the trial on December 31, 1932, defendant offered an amended plan of refinancing and amended its answer to interpose this plan as a defense. This new plan shows an eleventh-hour repentance on the part of the defendant. Under it substantially all of the objectionable features of the original plan are retained. Defendant gives up its attempt to acquire the fee for itself. It substitutes, however, an uncontrolled privilege to manage the property for ten years under a voting trust arrangement. The voting trustees are to be selected by the defendant. No justification for this was offered on the argument.

Prior to the gratuitous interference of defendant in the bondholders' affairs, the bondholders had a first lien upon all property other than the furniture. They were in a position to reduce this lien to possession through foreclosure of the trust mortgage. In short, under the normal procedure contemplated by the mortgage,

the bondholders at very little expense would have owned the property. Under the so-called reorganization plan proposed by defendant, the bondholders will have nothing left but a subordinate lien for barely one-half of their original investment. Their ownership of the stock of the reorganized company by reason of the voting trust and the maturity of the prior mortgage has very little value. The existence of earnings will depend on the efficiency and good faith of defendant's management. The position of the defendant, however, which has practically no financial investment in the property, will be advanced from that of a mere underwriter to one where it will be assured of the absolute control and management for ten years of a completely equipped hotel in which over $600,000 of bondholders' money is invested.

We feel that the only inference to be made is that defendant is attempting to enrich itself at the expense of these bondholders. We believe that the subterfuges to which the defendant is driven in its attempt to retain its dominating position in this issue should not and cannot receive the approbation of the court.

On the facts, we hold that defendant has proved an unfaithful agent or trustee. On the law, we find that the defendant corporation has exceeded its powers. The judgment should be reversed, with costs, on the law and the facts and judgment granted for the plaintiffs, appellants, as prayed for in the complaint, with costs.

FINCH, P. J., MERRELL, GLENNON and UNTERMYER, JJ., concur.

Judgment reversed, with costs, and judgment granted for the plaintiffs, appellants, as prayed for in the complaint, with costs. Settle order on notice, reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.