**MANN et al. v. COMMONWEALTH BOND CORPORATION et al. (four cases).**

District Court, S. D. New York.
June 2, 1938.

316

Harper & Matthews, of New York City (Harold Harper, Arthur R. Gaetjens, and James Wallace Kemp, all of New York City, of counsel), for plaintiffs.

Fox & Wintner, of New York City (Hugo Wintner, and Robert P. Schur, both of New York City, of counsel), for defendants.

WOOLSEY, District Judge.

The plaintiffs may have a decree with costs in each cause of action for all of which I hold defendants Commonwealth Bond Corporation and Orray E. Thurber jointly and severally liable.

I. My subject matter jurisdiction in this cause is based on diversity of citizenship and the fact that the amount sued for far exceeds the statutory requirement.

The plaintiffs Mann and Johnston, both trustees appointed by Judge Knox in corporation reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, are citizens and residents of the State of New York, the Commonwealth Bond Corporation is a corporation of Delaware, and Orray E. Thurber is a citizen and resident of the State of New Jersey.

Nils B. Hersloff was not served with a subpoena herein, and, consequently, although named as a defendant, there is not any personal jurisdiction over him in these causes.

II. The plaintiffs above named are trustees appointed under 77B of the Bankruptcy Act of four real estate owning corporations organized by the defendant Commonwealth Bond Corporation as a Bondholders

Committee pursuant to a deposit agreement and plan of reorganization which presumably was made for the benefit of the holders of bonds or participation certificates in real estate bonds and mortgages.

Each of the four reorganizations resulted from defaults on bonds secured by mortgages on real estate.

Tudor Hall, Inc. is a New Jersey corporation. The other three corporations are New York corporations.

The defendant Orray E. Thurber was a director and vice-president of the Commonwealth Bond Corporation and of its successive real estate management subsidiaries—Commonwealth Management Corporation and Commonwealth Realty Management, Inc.

III. The basis of these suits is that the Commonwealth Bond Corporation, a Delaware Corporation, with the knowledge and acquiescence of its directors, of whom Thurber and Hersloff were the two who controlled it, illegally and wrongfully held itself out as authorized to act in a trust or fiduciary capacity in New York State in violation of the Banking Laws of that State, and beyond the purpose for which it was authorized to transact business in New York, that while acting in such trust or fiduciary capacity it committed various breaches of trust including conversion and misapplication of trust funds which had come into its possession or control whereby such funds were wholly lost to the corporations represented by the plaintiffs.

There are claimed in addition to reimbursement for such funds items of special damages in certain of the causes.

The defendant-director Thurber is charged with gross negligence and mismanagement, first, in permitting the Company, contrary to the law of New York, to hold itself out as authorized to engage in a fiduciary business, and, second, for gross negligence in failing to exercise any such degree of care and supervision over the Company business as is expectable of the directors of a company engaged in a ·fiduciary or trust business.

IV. In view of the decisions of the United States Supreme Court on April 25, 1938, in Interstate Circuit Co., Inc., et al. v. United States, and Paramount Pictures Distributing Co., Inc. v. United States, 304 U.S. 55, 58 S.Ct. 768, 82 L.Ed. 1146, it is a work of supererogation to write a considered opinion in an equity cause, for its place will be taken by formal findings of fact and conclusions of law separately stated under Equity Rule 70½, 28 U.S.C.A. following section 723, Title 28 United States Code, Section 723.

I am contenting myself herein, therefore, with merely stating my conclusions of law, and the lines along which findings of fact may hereafter be drawn up and submitted.

My conclusions of law have been given from time to time during the argument. My findings of fact in respect of most of the items of damage have also been so given.

In some respects the damages finally allowed have been slightly different from the damages originally put forward, but generally speaking the plaintiffs' counsel is in a position to follow the complaints in the case in drawing up his findings of fact.

In making his findings of fact and conclusions of law, I suggest to the plaintiffs' counsel that they be submitted to me and marked "Proposed Findings of Fact and Law", and that when so submitted to me they be typed in triple spacing so that I may conveniently correct them interstitially.

They must be served with five days notice on the defendants' attorneys so that the latter may have ample opportunity to decide which, if any, of the suggested findings they wish to challenge.

If defendants' attorneys wish to challenge any findings of fact they can file their challenges in writing within the five days.

If I want any assistance I can call counsel in and any disputed findings can be settled at a conference in Chambers.

I think that covers the whole ground.

I must confess that this case has seemed to me unsavory. In spite of that fact, however, I should like to go on record,—as far as the lawyers are concerned—in expressing my appreciation of the assistance they have been to me and the care which they have taken in preparing the case for me.

V. I will first make such of my rulings as cover all four causes, and later deal with the separate details of the damages recoverable.

There is not any question whatever but that a reorganization committee for bondholders, when it prepares a depositary agreement and circularizes bondholders for the deposit of their bonds, which deposit constitutes an acceptance of the agreement,

318

assumes the position of a fiduciary. Bullard v. Cisco, 290 U.S. 179, 54 S.Ct. 177, 78 L.Ed. 254, 93 A.L.R. 141; In re Commonwealth Bond Corporation, Evans v. Mann, 2 Cir., 77 F.2d 308, 309, 310; Carter v. First National Bank, 128 Md. 581, 98 A. 77.

■ This fiduciary position has many facets and extends not only towards the bondholders who have deposited their bonds, but also to all persons or corporations involved in the reorganization.

■ The deposit agreement in these causes assigned the deposited bonds to the Commonwealth Bond Corporation and thus gave it control of all the property underlying each bond and not in the hands of the indenture trustee; and the trust imposed on it was to see that all this property was duly transferred at the proper time to the new corporation, which according to the plans of each reorganization was to be set up to become the owner of the piece of property involved therein.

■ Thus by analogy, a reorganization committee is in the position of a promoter in respect of any moneys which may come into its hands, and such moneys should be directed to the purposes of the trust which it has undertaken, namely, to reorganize as well as possible the company which has failed to pay its bond interest so that it may carry on as successfully as may be for the new securities which may be issued on the reorganization. Cf. McCandless v. Furlaud, 296 U.S. 140, 160, 163, 56 S.Ct. 41, 80 L.Ed. 121; Humble Oil & Refining Company v. Campbell, 5 Cir., 69 F.2d 667, 670, certiorari denied 292 U.S. 648, 54 S.Ct. 860, 80 L.Ed. 1498; San Leandro Canning Company v. Perillo, 84 Cal.App. 627, 258 P. 666, 669; Hecla Consolidated Gold Mining Company v. O'Neill, 65 Hun 619, 19 N.Y. S. 592, 47 N.Y.St.R. 211, 212, a decision of the General Term for the First Department.

■ I think that the cases just cited amply sustain the theory on which the plaintiffs' suits were brought in each of the four causes of action and gives them a locus standi as plaintiffs' because they are trustees under 77B for the new real estate corporation which was formed in each of these four reorganizations to take over the property above referred to.

The plaintiffs are, therefore, entitled to maintain as cestui qui trustent an action in equity for such funds as should have been forthcoming for the new corporation but have been improperly withheld from it.

If the Massachusetts case of Dunning v. Bates, 186 Mass 123, 71 N.E. 309, cited by defendants' counsel be considered as contrary to this principle and to the authorities which I have cited above, all I can say is that I do not agree with it.

As a result, the plaintiffs Mann and Johnston are entitled to recover the items of money and of damages claimed by them, to which we have been referring throughout the trial—with the fact in mind that the real estate corporations of which they are trustees were not formed at the time when some of the misapplications of funds occurred—as "the pre-natal items."

VI. All this is on the assumption that the Commonwealth Bond Corporation was a proper kind of corporation to act in New York State, as it sought to act, as a depositary on reorganization.

■ But the real situation is still worse, for, as a matter of law, the Commonwealth Bond Corporation was not a proper corporation to act for fiduciary purposes in New York as has been held by the New York State Courts. Cf. Section 131 of the Banking Law of New York State, Consol. Laws, c. 2; Bank of Manhattan and Trust Company v. Silrap Construction Company, Inc.,[1] affirmed, Second Dept. 241 App.Div. 686, 269 N.Y.S. 930, affirmed President, etc., of Manhattan Co. v. Newberry, 265 N. Y. 588, 193 N.E. 333; Jewett v. Commonwealth Bond Corporation, 241 App.Div. 131, 133-134, 271 N.Y.S. 522, appeal dismissed 267 N.Y. 554, 196 N.E. 576; cf. President, etc., of Manhattan Co. v. Ellda Corp., 245 App.Div. 625, 629, 283 N.Y.S. 827; and compare also opinion of Mr. Justice Cardozo in East End Trust Company v. Otten, 255 N.Y. 283, 174 N.E. 655.

VII. I now turn to the liability of the defendant Thurber.

After studying carefully the facts in these causes and trying to find out what the real situation was, I hold that what happened was this:

Mr. Hersloff and Mr. Thurber, with three other men, had owned together the Interocean Oil Company and had made money out of it. Hersloff and Thurber were through with active business, and Interocean Oil Company was in October 1930, in voluntary liquidation, with Hersloff and

---

[1] No opinion for publication.

Thurber in charge; for only Hersloff and Thurber were left of the original five men who together owned the Interocean Oil Company. The other three men were dead and their interests in the liquidation of the Interocean Oil Company was only through their estates.

With that situation existing, Hersloff, without consulting the representatives of the estates of the other persons interested in the Interocean Oil Company, decided to buy the control of the Commonwealth Bond Corporation.

The knowledge that the Commonwealth Bond Corporation was for sale was called to Hersloff's attention by Mr. Kuney as something out of which he and Thurber might make a little money.

The way they were to make this money, as Mr. Thurber admitted to me on his examination, when he was on the stand, was by reorganization of the real estate corporations controlled by the Commonwealth Bond Corporation which were then in default, and of such others as might get into default, and by charging management fees for management of all the real estate corporations controlled by the Commonwealth Bond Corporation.

I hold that in examining the evidence one starts out with the obviously clear fact that Mr. Thurber was aware of exactly what was expected to be done with the Commonwealth Bond Corporation.

I did not believe the story which Mr. Thurber told on the stand, and his role as ingénu, with Mr. Hersloff as the "wicked partner" made no impression whatever on me.

The expectable investigation by him of the personnel of this corporation which was going into a fiduciary business was not made. True it is that he knew Mr. Sautter, but he did not investigate Mr. Kuney, who, as president of the Commonwealth Bond Corporation, was really in charge. He admitted to me at the beginning of his examination that he knew that the Commonwealth Bond Corporation did not have any working capital yet he lent money of the Interocean Oil Company to it from August 1931 to June 1932, by which time the Interocean Oil Company had advanced about $109,000.

Though owned by five different interests, the Interocean Oil Company was apparently entirely under the control of Mr. Hersloff and Mr. Thurber, and its moneys advanced by them were advanced without consultation with the other three interests involved.

Consequently, this case furnishes many examples of ways of improperly using other people's money. Indeed, this joint venture of Mr. Thurber and Mr. Hersloff in the Commonwealth Bond Corporation was nurtured almost from the beginning by the misapplication of funds.

Mr. Thurber signed many, if not all the checks of the Interocean Oil Company which were given to make the advances to Commonwealth Bond Corporation. He was at the time in question a man of about sixty-five. He had had a varied business experience in executive positions; and he was near New York City for eight or nine months every year, with practically nothing to do except to come to the city occasionally and look into the situation of the Interocean Oil Company, to look after some private business of his own, as he said, and to look as much as he wanted to into this joint venture of his and Mr. Hersloff's,— the Commonwealth Bond Corporation.

Now he did not pay the slightest attention to the Commonwealth Bond Corporation reports which were sent in weekly to the offices of the Interocean Oil Company. He did not exercise in slightest degree the kind of care that a director of a corporation expectably should exercise, especially I might say of a corporation engaged in fiduciary activities, in order to see that the money which the corporation handled was dealt with properly.

It seems to me that Mr. Wintner's argument that a director of one corporation cannot be held liable for any passive negligence towards another corporation, whilst at the same time he might be liable for negligence to his own stockholders, falls a little short of the point in these causes because it seems to me that the corporations represented by the trustees here which were the real estate owning corporations and whose stock was owned entirely by the Commonwealth Bond Corporation, were really a part of the setup, and of the business of the Commonwealth Bond Corporation, and cannot be regarded as such distinct corporations as were involved in those cases to which Mr. Wintner refers.

I hold, therefore, that there are three grounds on which Mr. Thurber should be held liable in this cause. They are as follows:

First: I find that he had full knowledge of all the shortages on trust accounts

and other difficulties in which the Commonwealth Bond Corporation found itself involved. He knew of, but did not even investigate the truth of newspaper attacks on the integrity of its management. He simply turned his back on things that he might have stopped. One must remember the old saying, "None is so blind as he who will not see."

Second: I think that he was grossly negligent in not paying any attention to the business of the Commonwealth Bond Corporation, and in not paying the slightest attention to the fact that he was not called to meetings of the corporation, and was, as he knew, doing nothing about it at all. It seems to me that gross negligence on his part as director is made out beyond peradventure.

■ There are two quotations which are apt in this connection. One of them is from Thompson on Corporations, Second Edition, Section 1275, speaking of directors, which says: "Whatever may be regarded as negligence in one instance or under certain circumstances, would not be regarded as negligence under other circumstances; proper performance of their duties is a question of fact and must be determined in each case in view of all the circumstances. In considering such circumstances regard may be had for the character of the corporation, the condition of its business, the usual method in which such corporations are managed, any and all other relevant facts that tend to throw light upon the question of proper discharge of the duty as a director."

■ Then there is another quotation, from a North Carolina case, Anthony v. Jeffress, 172 N.C. 378, 90 S.E. 414, 415, which says: "While the directors are not liable for losses resulting from mistakes of judgment, such as are excused in law, they are liable for losses resulting from gross mismanagement and neglect of the affairs of the corporation. Good faith alone will not excuse them when there is lack of the proper care, attention, and circumspection, in the affairs of the corporation which is exacted of them as trustees."

Third: Now I turn to the question of the joint adventure of Messrs. Thurber and Hersloff.

■ From the very beginning of the case it has seemed to me that Mr. Hersloff and Mr. Thurber, being solely in control of the Interocean Oil Company, under the shield, as it were, of that and other corporations which we have heard described here, had together gone ahead without the consent of their fellow-owners of the Interocean Oil Company, and bought the Commonwealth Bond Corporation, and that having gone into that business together and started out in it together, they had gone on with it for almost four years until at last, after receiving a letter threatening him with personal liability Mr. Thurber resigned on April 22, 1934. Consequently I hold that Mr. Thurber and Mr. Hersloff must be deemed to be joint adventurers for this particular purpose of running the Commonwealth Bond Corporation, and that, therefore, they are liable as partners ad hoc.

■ Of course, Mr. Hersloff is not before me, but Mr. Thurber is by reason of their joint adventure bound by communications to Mr. Hersloff in connection with the business of the Commonwealth Bond Corporation, of which we have so many instances in the record. For that reason I admitted the communications made to Mr. Hersloff as against Mr. Thurber, because I regard them as mutually involved in this joint adventure.

■ Therefore I hold that Mr. Thurber is jointly and severally liable, with the Commonwealth Bond Corporation, to the plaintiffs.

■ In this connection it is worth noting that the use of the Commonwealth Bond Corporation by its officers and directors to carry on a business which was illegal under New York law exposed all of them to liability as partners. Cf. Mandeville v. Courtright, 3 Cir., 142 F. 97, 6 L.R.A.N.S., 1003, certiorari denied sub nom; Mayer v. Mandeville, 202 U.S. 615, 26 S.Ct. 764, 50 L.Ed. 1172.

VIII. The principal amounts recoverable in my opinion by the several corporations are as follows:

*A. 912 Broadway Corporation:*

| | |
|---|---:|
| Balance of rent as shown by the books | $11,444.77 |
| Refinancing fee | 28,850.00 |
| Reimbursement to Commonwealth Bond Corporation for distributive share of purchase price paid non-depositing holders | 20,440.05 |
| | $60,734.82 |

Credit amount received on delivery to the mortgage trustee after foreclosure sale of $5200 of bonds previously not deposited ........................ 1,783.18

  Total net claim of principal ....:............ $58,951.64

B. *2061 Realty Corporation:*
Balance of net rent collected by Commonwealth Management Corporation ................ $25,477.83
Balance of net rents collected by Commonwealth Realty Management, Inc. ............... 14,845.46

          $40,323.29

C. *120 West 70th Street Corporation:*
Pro rata share of balance of net rents collected by Commonwealth Management Corporation (43.55% of $15,368.87) ................... $ 6,693.14
Improper deduction from trust funds of withdrawal fee Empire Trust Company........ 2,976.00
Balance of net rents collected by Commonwealth Realty Management, Inc. ......... 3,908.86
Loss of land and building..... 90,000.00

          $103,578.00

D. *Tudor Hall, Inc:*
Balance of net rents collected by Commonwealth ˑManagement Corporation (1,636.31 shown by books plus improper deduction from net rents of $3,475.02 expenses of Federal Trade Commission investigation) ... $ 5,111.33
Balance of net rents collected by Commonwealth Realty Management, Inc. (2,447.93 shown by books plus $10,000 transferred to Commonwealth Bond Corporation) ............... 12,447.93
Balance of funds received from Fidelity Union Trust Company as trustee .................:........ 14,997.50

          $32,556.76

 IX. The special damages to be added to these principal amounts in the several actions are as follows:

 A. In all these causes I grant compound interest on trust funds that were misapplied or misappropriated, with semi-annual rests. Cf. Hook v. Payne, 14 Wall. 252, 20 L.Ed. 887; Walker v. Walker, 9 Wall. 743, 19 L.Ed. 814; Parker v. New England Oil Corporation, D.C., 13 F.2d 158, reversed but on another ground 1 Cir., 19 F.2d 903; Clark v. Clark, 87 N.J.Eq. 504, 101 A. 300; Peterman v. United States Rubber Company, 221 Ill. 581, 77 N.E. 1108.

 B. In the case of 912 Broadway Corporation, I allow penal interest for failure to pay taxes when they fell due and the Company had funds with which to pay them. Cf. Chemical Bank & Trust Co. v. Ott, 248 App.Div. 406, 420, 289 N.Y.S. 228.

 C. As to the refinancing fees, I have disallowed all of them as improper deductions by a fiduciary on the ground that in respect of all the companies, except Tudor Hall, Inc., there was not any provision for the payment of such fees, and in the case of Tudor Hall, Inc., the fees were not earned, for the refinancing was not completed by the Commonwealth Bond Corporation.

 D. In the case of 120 West 70th Street Corporation, there is an additional item of special damage, namely, the loss of the real estate owned by that Company due to the ill-advised and negligent actions of the defendants in so loading 120 West 70th Street Corporation with fixed charges as to make it impossible for it to continue operations without default, the result being that on November 1, 1936, the Company by foreclosure lost its real estate, lands and buildings. I have fixed as of that date the value of the equity therein, less the first mortgage, as $90,000, which represents a recovery which on proper marshalling will go—less its share of trustees' fees and disbursements—to the bondholders under the second mortgage.

 E. The calculation of the penal interest and the compound interest is, as I explained at the end of the trial when I made rulings of law thereon, to be calculated by the accountants for the trustees and checked by the accountants for the defendants.

 Simple interest only will be allowed on the item of damages for loss of real estate at 120 West 70th Street.

 F. I hold that for the interest,—both the penal interest for failure to pay taxes, and the compound interest which is recoverable for trust funds misapplied or not accounted for—and the simple interest on the last item of damages just mentioned, Mr. Thurber as well as the Commonwealth Bond Corporation are jointly and several-

ly liable, for the reason that if Mr. Thurber had attended to the business of the Commonwealth Bond Corporation he could have directed its policy so as to have prevented its failure to pay the taxes when the opportunity to pay them existed, and also so as to have prevented the diversion of the trust funds which is the gravamen of so large a part of these claims, and the improvident financing of 120 West 70th Street Corporation.

Both defendants before me are, therefore, liable jointly and severally for all the recovery allowed herein.

G. Serve findings of fact and conclusions of law along the lines hereinabove outlined.