[Filed June 21, 1892.]

## JESSE M. ROTHROCK ET AL. *v.* LUCRETIA C. ROTHROCK ET AL.

WILLS—TESTAMENTARY CAPACITY.—A testator was paralyzed and unable to make any communication to those about him except by signs; but it appeared that at the time his will was executed, his mental faculties were unimpaired; that he perfectly understood his business affairs and the terms of the will; and that the will correctly represented his wishes as to the disposition of his property; *held*, that he was possessed of sufficient testamentary capacity.

Umatilla county: M. D. CLIFFORD, Judge.

Plaintiff appeals. Affirmed.

This is a contest as to the validity of the will of A. B. Rothrock, deceased. After said will had been probated in

common form, the appellants filed a petition in the county
court of Umatilla county, wherein they alleged, among
other things, that at the time of his death the said A. B.
Rothrock was about the age of seventy-four years; that in
consequence of old age, and other causes, his mind was
seriously impaired and shattered, and his memory destroyed;
that at the date thereof, and for a long time prior thereto,
and thereafter, and up to the time of his death, he was
incapable of exercising any judgment whatever over his
property, or in any other manner; that the mental condi-
tion of the said A. B. Rothrock, senior, at the date of the
execution of said alleged will, and for a long time prior
thereto, had been such that he was easily persuaded in the
course of his conduct, and the attempt to make or execute
the alleged will heretofore set forth, or to dispose of his
estate or property as therein provided, was the result of
undue influence exercised upon him, and by the said Lucre-
tia C. Rothrock, John William Rothrock, and A. B. Roth-
rock, junior, and other parties acting for them and in their
interest; that the said alleged will was not, in fact, the will
of the said A. B. Rothrock, senior; that the value of the
estate of the said A. B. Rothrock, senior, was about twelve
thousand dollars, and consisted of real and personal prop-
erty; that the said alleged will above described was not
executed by the said A. B. Rothrock, senior, with the for-
mality or in any manner prescribed by law, is of no validity,
and is void; that the said A. B. Rothrock, senior, at the
time of the execution of said alleged will, was of unsound
mind, and incapable of understanding the business in which
he was engaged at the time he executed said alleged will,
and that said alleged will was not the product of his own
free agency; that said alleged will was the result and the
cause of the fraudulent and undue influence and constraint
exercised upon and over him by the said Lucretia C. Roth-
rock, John William Rothrock, and the said Adam B. Roth-
rock, junior; that the said Adam B. Rothrock, senior, never

in fact signed said alleged will, or authorized or requested any one else to sign the same for him, and that in fact the said alleged will was never executed by the said Adam B. Rothrock, senior, deceased; that the said will was not made, signed, or acknowledged by said Rothrock, deceased, in the presence of said witnesses, nor did the said witnesses sign the same at his request.

In effect, the answer simply denied the material allegations of the petition, except the relationship of the parties, the probate of the will, etc.

*Bailey & Balleray*, for Appellants.

*J. C. Leasure*, and *N. B. Humphrey*, for Respondents.

STRAHAN, C. J.—No question of law is involved in this case. The entire controversy is one of fact. The appellants seek to defeat the probate of this will on the ground of undue influence; that the testator was not of sound mind when the will was executed; that it was not executed by the testator, nor with such formalities the law requires. It appears that the testator had been partially paralyzed a short time before the will was executed; but the evidence makes it clear to us that at the time the will was made his mind was unimpaired. It is true, the testator was unable to talk or to give specific directions in words as to the disposition he wished to make of his property; but the scrivener seems to have proceeded with great care and prudence, and to have elicited from him all the information necessary to enable him to write the will. This was done by asking him questions. The scrivener would commence by asking the testator questions, always framing them so they could be answered by yes or no. In this way he learned how much the testator wished to give to each child, and the provision he wished to make for his wife. This process of discovering the wishes of the testator as to the disposition of his property was slow, but the result was just as certain and satisfactory as if he could have given full

and connected directions. Besides, after the will had been written, it was slowly and carefully read to the testator, item by item, and he was asked as to each one if it suited him, and to each question he made an affirmative answer by nodding his head. He manifested his wishes as to the details of the execution of the will in the same way, and we have no doubt of their sufficiency. As to the testator's mental soundness when the will was executed, there can be no doubt. Though stricken with paralysis and remaining speechless, all the evidence concurs in the fact that his mind remained unimpaired up to the time of his death, and he did not lose either an interest or knowledge of the details of his business while he lived.

We think the court below could not have done otherwise than sustain the will, and we affirm the decree.