[Argued May 29, 1893; decided June 27, 1893.]

## IN RE CLINE'S WILL.

[S. C. *Bain* v. *Cline*, 33 Pac. Rep. 542.]

| 24 | 175 |
| 37 | 445 |
| 24 | 175 |
| 40 | 504 |

WILLS — INSANE DELUSIONS. — A delusion is a belief that has no reasonable basis in fact, and where there are any facts or circumstances that would or might lead the testator to entertain the particular belief that he does, such belief is not a delusion : *Potter* v. *Jones*, 20 Or. 240, cited and followed.

IDEM. — A determination by a testator to disinherit certain children because they were witnesses for their mother in a divorce suit against him, and had sympathized with her in the proceeding, is not an insane delusion rendering him unfit to make a will. However erroneous may have been his beliefs about the children, and their feelings toward him, there was still a basis of fact for them, and such beliefs are not delusions.

WILLS — TESTAMENTARY CAPACITY. — One who though he is seventy-five years of age, subject to severe bodily infirmities, absent minded and irritable, and his memory has failed him to quite an extent, is nevertheless a man of strong will and very difficult to move from an opinion once formed, and has not lost his reasoning powers, and has a good understanding of all business in which he is engaged, has the necessary capacity to make a will. *Chrisman* v. *Chrisman*, 16 Or. 127, cited and followed.

Multnomah County: LOYAL B. STEARNS, Judge.

Proceeding by Anne E. Bain and others, children of Jacob Cline, deceased, to set aside and annul the paper purporting to be the last will of said Jacob. The will was sustained and contestants appeal. Affirmed.

*John H. Mitchell,* and *Albert H. Tanner* (*Hiram E. Mitchell* on the brief), for Appellants.

*Richard Williams*, and *Emmett B. Williams*, for Respondents.

PER CURIAM.— This was a proceeding instituted in the county court of Multnomah County by the contestants to have the order admitting the will of Jacob Cline, deceased, vacated, and the will set aside and declared void. The testator executed this will at Portland, Oregon, in August, 1888, and died at San Bernardino, California, in December of the same year. By its terms his children Anne E. Bain, Mary P. Sax, Isabella Cook, and John Cline, and his grandchildren Lewis Cline, Laura Cline, Kate Cline, and Antha Cline, the children of Antha Cline, a deceased daughter, were left the nominal sum of one dollar each, and all the rest of his property was bequeathed and devised to his other two children Jacob Cline, Jr., and Jane Tunstall, who were appointed executor and executrix thereof without bonds. The county court sustained the validity of the will, and made an order re-probating it, from which the contestants appealed to the circuit court, where a decree was rendered affirming the order of the county court, from which the contestants appeal to this court.

The testimony discloses that from the time of his marriage until about 1862 the testator had been kind to his wife and affectionate to his children, but about that time he made a visit to the eastern states, and upon his return brought with him a woman whom he kept in his house against the protest of wife, who, in consequence of his misconduct, obtained a divorce from him. At the trial of that suit most of the children whom he disinherited were called as witnesses for their mother, and he then formed the determination to disinherit such of them as had appeared as witnesses for, or sympathized with, her. He never overlooked the part they had taken, or forgave them, and numerous witnesses testify to statements made by him to the effect that the contestants should never have

any of his estate for that reason, but the devisees of his will, being very young at that time, could neither testify for, or otherwise aid, either party, and the testator's feelings towards them were consequently kind and affectionate. The grounds upon which the will is alleged to be void are that the testator, at the time it was executed, was, and for many years previous had been, a monomaniac, or the victim of an insane delusion, in reference to the children who were disinherited; and had without any adequate reason conceived the idea that they had deeply wronged him by taking sides with their mother, and falsely testifying against him in the divorce suit between himself and his wife; that they did not respect him, and were trying to rob him of his property, and that while laboring under these impressions he formed a prejudice towards them, and dwelt upon their supposed misconduct, until he had become the victim of an insane delusion, under the influence of which, and by means of the alleged inducement and fraudulent misrepresentations of the devisees, he made the will in question. It was held in *Potter* v. *Jones*, 20 Or. 240 (25 Pac. 769; 12 L. R. A. 160), that if there were any facts or circumstances which would reasonably lead the testator to entertain the belief he possessed, such belief was not a delusion. Applying this rule to the facts disclosed in the case at bar, it appears that most of the disinherited children were witnesses in the divorce suit against him, and he thought all sympathized with their mother, and these facts and circumstances led him to believe they were opposed to him, and were sufficient to support the conclusion he reached, and to establish the belief he possessed, hence such belief cannot be treated as a delusion.

The appellants contend that the testator, in consequence of old age and disease, was lacking in testamentary capacity. At the time the will was executed he was seventy-five years old, was weak and feeble, and had been quite ill with inflammatory rheumatism. He was afflicted with

catarrh, which affected his head, back, and spine, and was so nervous that it was difficult for him to raise any liquid to his mouth without spilling it. He was absent minded and irritable, and his memory had failed him to quite an extent, particularly so after his rheumatic attack.

The testimony on this branch of the subject shows that notwithstanding his infirmities the testator was a man of strong will, and when he reached a conclusion upon a given question it was very difficult to change his opinion. Many witnesses who had known him for a long time, and whose veracity cannot be questioned, say that, although feeble, he possessed at the time the will was executed the same trait of character that he manifested in his younger days, that his mind had not lost any of its powers of reasoning, and that he had a good understanding of all business in which he was engaged. In *Chrisman* v. *Chrisman*, 16 Or. 127 (18 Pac. Rep. 6), it was held that neither old age, sickness, nor extreme distress or debility of body incapacitate, provided the testator has possession of his mental faculties, and understands the business in which he is engaged. We conclude from the foregoing that while the testator's memory may have been, and probably was, somewhat impaired with age and bodily infirmity, he had the necessary testamentary capacity, and executed his will according to his fixed determination made many years prior to its execution.

It is further contended that the execution of the will was the result of the undue influence, and the false and fraudulent representations of the devisees. A careful examination of all the testimony upon this subject leads us to the conclusion that the testator possessed a mind which none could influence or alter, that the opportunity was lacking for the exercise of such influence by the devisees, and that he executed his will in the way he had constantly indicated for a period of twenty-five years.

For these reasons the decree of the court below must be AFFIRMED.