Peter Crockett JACKSON, a minor by John E. Walker, his Guardian ad litem, Plaintiff,

v.

The UNITED STATES NATIONAL BANK, PORTLAND, OREGON, a national banking association, David Lloyd Davies, The United States National Bank, Portland, Oregon, a national banking association, and David Lloyd Davies, as Executors under the purported will and testament of Maria C. Jackson, deceased, The United States National Bank, Portland, Oregon, a national banking association, and David Lloyd Davies and William W. Knight, as purported Trustees appointed by said purported last will and testament, Defendants.

Civ. No. 8752.

United States District Court
D. Oregon.
July 1, 1957.

Livingston & Borregard, Lawrence Livingston, Ricardo J. Hecht, San Francisco, Cal., Jack, Goodwin & Santos, Glenn R. Jack, Oregon City, Or., for plaintiff.

Maguire, Shields, Morrison & Bailey, Roy F. Shields, Randall B. Kester, Portland, Or., for defendants.

MATHES *, District Judge.

This cause is now before the court upon defendants' motion to dismiss "on the ground that the court lacks jurisdiction over the subject matter because the action is essentially a proceeding to contest a will and therefore one within the exclusive jurisdiction of the state probate courts."

Original federal jurisdiction has been invoked solely upon the ground of claimed diversity of citizenship between the parties and the requisite amount in controversy. 28 U.S.C. § 1332(a).

The jurisdictional facts, as alleged in the amended complaint and admitted by the pending motion, are briefly these: The testatrix, Maria C. Jackson, a citizen and resident of Oregon, died on February 3, 1956, leaving a will and certain codicils. On February 7, 1956, upon the *ex parte* petition of defendant executors, the will was admitted to probate, in "common form", by the appropriate State Court, the Probate Department of the Circuit Court of Multnomah County, Oregon, and letters testamentary were issued to defendant executors.

Following this *ex parte* admission to probate, plaintiff, a citizen of California and the minor great-grandson of the testatrix, brought this action by his guardian ad litem against the executors and the testamentary trustees under the will, all citizens of Oregon.

Concededly, then, complete diversity of citizenship exists between plaintiff and all defendants [Fed.R.Civ.P. 17(c), 28 U.S.C.; 28 U.S.C. § 1348], and the requisite amount is in controversy. 28 U.S.C. § 1332(a).

The Constitution provides of course that federal "judicial Power shall extend to * * * Controversies * * * between Citizens of different States." U.S.Const. art. III, § 2, cl. 1.

However, Article III, § 2 "simply gives to the * * * courts the capacity to take jurisdiction * * * it requires an act of Congress to confer it." Kline v. Burke Construction Co., 1922, 260 U.S. 226, 234, 43 S.Ct. 79, 83, 67 L.Ed. 226; Lockerty v. Phillips, 1943, 319 U.S. 182, 187, 63 S.Ct. 1019, 87 L.Ed. 1399.

The Congress has conferred upon the district courts "original jurisdiction of all civil actions" in which diversity of citizenship and the requisite amount in controversy are present. 28 U.S.C. § 1332.

Use of the term "civil actions" in the 1948 revision of Title 28 of the United States Code did not enlarge the jurisdiction of the district courts beyond that of the time-honored phrase "suits of a civil nature at common law or in equity" employed in the Judiciary Act of September 24, 1789. 1 Stat. 78;

* Sitting by assignment from the Southern District of California.

Rosen v. Alleghany Corp., D.C.S.D.N.Y. 1955, 133 F.Supp. 858, 865; Reviser's Note to 28 U.S.C. § 1332.

■ In the case at bar plaintiff seeks an adjudication as to the validity, construction and alleged subsequent revocation of parts of a will, and as to heirship. The issues so tendered are "Controversies" (Aetna Life Insurance Co. of Hartford, Conn. v. Haworth, 1937, 300 U.S. 227, 240–241, 57 S.Ct. 461, 81 L.Ed. 617; Fidelity Nat. Bank & Trust Co. of Kansas City v. Swope, 1927, 274 U.S. 123, 47 S.Ct. 511, 71 L.Ed. 959; Tutun v. United States, 1926, 270 U.S. 568, 577, 46 S.Ct. 425, 70 L.Ed. 738), clearly within the constitutional dimensions of "judicial Power" (cf. Fontain v. Ravenel, 1854, 17 How. 369, 391–392, 58 U.S. 369, 391–392, 15 L.Ed. 80).

However, these "Controversies" do not necessarily fall within the scope of a "civil action" [28 U.S.C. § 1332] "at common law or in equity" [1 Stat. 78 (1789)], over which the Congress has conferred jurisdiction upon this court.

In order to determine whether this diversity case can be counted among "all civil actions" within the meaning of 28 U.S.C. § 1332, it is necessary to consider the nature of the relief sought.

In the complaint as amended plaintiff asserts at least four separate claims or causes of action, but these are not stated separately. Fed.R.Civ.P. 10(b). First plaintiff seeks an adjudication that certain provisions of the Jackson will and codicils, which establish a testamentary trust, are invalid, because not the will of the testatrix, having been obtained by claimed acts of fraud and undue influence.

Second, plaintiff seeks a judgment declaring that, even if the trust provisions are the will of the testatrix, the testamentary trust is nonetheless invalid, because (a) the purpose of the trust is so indefinite and uncertain, and the powers of the trustees so broad and indefinite, that the trust cannot be enforced by a court of equity; and (b) the trust is perpetual in duration without

being primarily charitable in character, and so is a perpetuity in violation of Oregon law.

Third, plaintiff seeks a judgment declaring that certain provisions of the will were amended or revoked by an alleged later, missing will or codicil; and fourth, a decree that as to all property not found by the court to have been disposed of by will, the testatrix died intestate, leaving plaintiff as her sole heir and next of kin.

■ Unquestionably, then, all the relief sought in the case at bar is equitable in nature, and necessarily invokes the federal equity jurisdiction. So it is well to recall at the outset that "the general powers of Federal courts when sitting as courts of equity * * * can be exerted only in cases otherwise within the jurisdiction of those courts as defined by Congress". Briggs v. United Shoe Mach. Co., 1915, 239 U.S. 48, 50, 36 S.Ct. 6, 7, 60 L.Ed. 138.

Since complete diversity of citizenship and the requisite amount in controversy are here present this case is clearly one "otherwise within the jurisdiction of [this court] * * * as defined by Congress." Ibid.

In Twist v. Prairie Oil Co., 1927, 274 U.S. 684, 47 S.Ct. 755, 71 L.Ed. 1297, Mr. Justice Brandeis declared for the Court that "the trial court * * * may, of its own motion, take the objection that the case is not within the equity jurisdiction. * * * But that objection * * * does not go to the power of the court as a federal court." 274 U.S. at page 691, 47 S.Ct. at page 757.

■ Therefore, the jurisdictional questions raised by the pending motion to dismiss are to be resolved by inquiring into "the general powers of Federal courts when sitting as courts of equity." Briggs v. United Shoe Mach. Co., supra, 239 U.S. at page 50, 36 S.Ct. at page 7. Specifically, the problem is to determine whether this court in the exercise of its equity jurisdiction has "the power, that is, the jurisdiction" (Fauntleroy v. Lum, 1908, 210 U.S. 230, 235, 28 S.Ct.

641, 642, 52 L.Ed. 1039) to grant the relief prayed.

The equity jurisdiction of the federal district courts, and of their predecessor circuit courts, as it has existed since conferred by enactment of § 11 of the Judiciary Act of 1789 (1 Stat. 78), has never been held to exceed in scope that which the High Court of Chancery in England possessed in 1789. Atlas Life Ins. Co. v. W. I. Southern, Inc., 1939, 306 U.S. 563, 568, 59 S.Ct. 657, 83 L.Ed. 987; Mississippi Mills v. Cohn, 1893, 150 U.S. 202, 205, 14 S.Ct. 75, 37 L.Ed. 1052; Payne v. Hook, 1868, 7 Wall. 425, 430, 74 U.S. 425, 430, 19 L.Ed. 260; State of Pennsylvania v. Wheeling & Belmont Bridge Co., 1855, 18 How. 460, 462, 59 U.S. 460, 462, 15 L.Ed. 497.

█ As the Court explained in Atlas Life Ins. Co. v. W. I. Southern, Inc., supra: "The 'jurisdiction' thus conferred on the federal courts to entertain suits in equity is an authority to administer in equity suits the principles of the system of judicial remedies which had been devised and was being administered by the English Court of Chancery at the time of the separation of the two countries." 306 U.S. at page 568, 59 S.Ct. at page 659.

In 1789, after a will of personal property had been admitted to probate, an action to set aside the will, or parts thereof, upon the grounds of fraud or undue influence upon the testator, or the existence of a later will, was not within the jurisdiction of England's High Court of Chancery, but was within the exclusive jurisdiction of the English ecclesiastical courts. Barnesly v. Powel, 1 Ves.Sen. 284, 27 Eng.Rep. 1034 (Ch. 1749); Bennet v. Vade, 2 Atk. 324, 26 Eng.Rep. 597 (Ch.1742); Kerrich v. Bransby, 7 Brown's P.C. 437, 3 Eng. Rep. 284 (H.C.1727); 1 Ballow, A Treatise of Equity 12 (1793); 2 id. 325, 379–80 (1794); 1 Holdsworth, a History of English Law 625–30 (7th ed. 1956); 5 id. 320 (2d ed. 1945); see, e. g.: Helyar v. Helyar, 1 Lee 472, 161 Eng.Rep. 174 (Prer.1754); Lamkin v. Babb, 1 Lee 1, 161 Eng.Rep. 1 (Prer.1752).

In those eighteenth century days, moreover, wills of real property were not even admitted to probate; and an action to set aside a will of real property, like an action to set aside a deed, was tried at law. Webb v. Claverden, 2 Atk. 424, 26 Eng.Rep. 656 (Ch.1742); Kerrich v. Bransby, supra, 7 Brown's P.C. 437, 3 Eng.Rep. 284; Mariott v. Mariott, 1 Strange 666, 93 Eng.Rep. 770 (Ch. 1726); 1 Ballow, op. cit. supra, at 12.

█ Thus it was that, in 1789, the jurisdiction of the English High Court of Chancery did not embrace suits to set aside wills of either real or personal property, either because of fraud or undue influence upon the testator, or because of the existence of a later will.

This want of jurisdiction of the English Court of Chancery, and of the federal courts of equity since 1789, has often been noted by the Supreme Court; and "by a series of decisions in this court it has been established that since it does not pertain to the general jurisdiction of a court of equity to set aside a will or the probate thereof, or to administer upon the estates of decedents *in rem*, matters of this character are not within the ordinary equity jurisdiction of the federal courts * * *." Sutton v. English, 1918, 246 U.S. 199, 205, 38 S.Ct. 254, 256, 62 L.Ed. 664; Farrell v. O'Brien, 1905, 199 U.S. 89, 110, 25 S.Ct. 727, 50 L.Ed. 101; In re Broderick's Will, 1874, 21 Wall. 503, 517, 520, 88 U.S. 503, 517, 520, 22 L.Ed. 599; accord: Markham v. Allen, 1945, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256; Ellis v. Davis, 1883, 109 U.S. 485, 494, 3 S.Ct. 327, 27 L.Ed. 1006.

As explained in an earlier opinion: "In cases of fraud, equity has a concurrent jurisdiction with a court of law, but in regard to a will charged to have been obtained through fraud, this rule does not hold. It may be difficult to assign any very satisfactory reason for this exception. That exclusive jurisdiction over the probate of wills is vested in another tribunal, is the only one that can be given." Gaines v. Chew, 1844, 2 How. 619, 645, 43 U.S. 619, 645, 11 L.Ed. 402.

In Markham v. Allen, supra, Mr. Chief Justice Stone declared for the Court: "It is true that a federal court has no jurisdiction to probate a will or administer an estate, the reason being that the equity jurisdiction conferred by the Judiciary Act of 1789 * * * which is that of the English Court of Chancery in 1789, did not extend to probate matters." 326 U.S. at page 494, 66 S.Ct. at page 298.

Supreme Court interpretation of the limits of the congressional grant of equity jurisdiction has been made "in the light of the tacit assumptions upon which it is reasonable to suppose the language was used." State of Ohio ex rel. Popovici v. Agler, 1930, 280 U.S. 379, 383, 50 S.Ct. 154, 155, 74 L.Ed. 489. These "tacit assumptions" undoubtedly took note of the accumulated experience of the English courts of 1789 in determining which rights involving decedents' estates might be inforced in personam in Chancery, without interfering with the ecclesiastical court's possession of decedents' estates; and the apparent acceptance by the Congress of the 1789 American status quo, which held the concept that "the authority to make wills is derived from the state" (Farrell v. O'Brien, supra, 199 U.S. at page 110, 25 S.Ct. at page 734).

There are considerations of policy too, which further limit the scope of federal equity jurisdiction, and especially so where "the power of the court as a federal court" (Twist v. Prairie Oil Co., supra, 274 U.S. at page 691, 47 S.Ct. at page 757) depends upon diversity of citizenship [28 U.S.C. § 1332].

■ A federal court will not, as a matter of comity, proceed to a judgment in rem or quasi in rem, if jurisdiction over the res has previously been acquired by and continues in a State court; but may proceed to judgment in personam, adjudicating rights in the res and leaving the in personam judgment to bind as res judicata the court having jurisdiction of the res. Markham v. Allen, supra, 326 U.S. at page 494, 66 S.Ct. at page 298; Pufahl v. Estate of Parks, 1936, 299 U.S. 217, 226, 57 S.Ct. 151, 81 L.Ed. 133; United States v. Bank of New York, 1936, 296 U.S. 463, 477-478, 56 S.Ct. 343, 80 L.Ed. 331; Kline v. Burke Construction Co., supra, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226; Sutton v. English, supra, 246 U.S. at page 205, 38 S.Ct. at page 256; Waterman v. Canal-Louisiana Bank & Trust Co., 1909, 215 U.S. 33, 44, 30 S.Ct. 10, 54 L.Ed. 80; Yonley v. Lavender, 1874, 21 Wall. 276, 88 U.S. 276, 22 L.Ed. 536.

The repeated assertion of this principle of comity has made it a "rule of general application" (Byers v. McAuley, 1892, 149 U.S. 608, 614, 13 S.Ct. 906, 908, 37 L.Ed. 867), but the particular application of it remains, as with other discretionary refusals to exercise jurisdiction, a "question * * * of discretion in every case" (The Maggie Hammond, 1869, 9 Wall. 435, 457, 76 U.S. 435, 457, 19 L.Ed. 772).

The justification for this policy refusal to exercise federal jurisdiction in rem, in cases where the State court has prior jurisdiction of the res, is "to avoid unseemly and disastrous conflicts in the administration of our dual judicial system, * * * and to protect the judicial processes of the court first assuming jurisdiction" (Penn General Casualty Co. v. Commonwealth of Pennsylvania, 1935, 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850; since "to give effect to its jurisdiction, the court must control the property. The doctrine is necessary to the harmonious cooperation of federal and state tribunals" (Princess Lida of Thurn and Taxis v. Thompson, 1938, 305 U.S. 456, 466, 59 S.Ct. 275, 280, 83 L.Ed. 285).

The applicability of the principle to cases involving decedents' estates is most compelling when it is borne in mind that: "The public interest requires that the estates of deceased persons, being deprived of a master, and subject to all manner of claims, should at once devolve to a new and competent ownership; and, consequently, that there should be some convenient jurisdiction and mode of proceeding by which this

devolution may be effected with least chance of injustice and fraud; and that the result attained should be firm and perpetual." In re Broderick's Will, supra, 21 Wall. at page 509, 88 U.S. at page 509.

In the case at bar then, the Jackson estate being now in process of probate in the Oregon state court, this court would not, as a matter of comity, proceed to a judgment in rem, even to grant relief clearly within the federal equity jurisdiction; but would proceed only "where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." Markham v. Allen, supra, 326 U.S. at page 494, 66 S.Ct. at page 298.

Moreover, since Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, there is to be considered the further policy limitation that, inasmuch as "a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State" (Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079), federal diversity jurisdiction, even over suits in equity which fall within the scope of 1789 jurisdiction of the English High Court of Chancery, should be disavowed as to actions "to which the State had closed its courts" (Woods v. Interstate Realty Co., 1949, 337 U.S. 535, 537, 69 S.Ct. 1235, 1237, 93 L.Ed. 1524; Griffin v. McCoach, 1941, 313 U.S. 498, 507, 61 S.Ct. 1023, 85 L.Ed. 1461; cf. Williams v. Minnesota Mining & Mfg. Co., D.C.S.D.Cal. 1953, 14 F.R.D. 1, 9).

Permissive disavowal of federal diversity jurisdiction is not without limits, of course; for the Supreme Court has repeatedly decided "that the jurisdiction of the courts of the United States over controversies between citizens of different States cannot be impaired by the laws of the states * * * which regulate the distribution of their judicial power." Hyde v. Stone, 1857, 20 How. 170, 175, 61 U.S. 170, 175, 15 L.Ed. 874; Payne v. Hook, supra, 7 Wall. at page 430, 74 U.S. at page 430; McClellan v. Carland, 1910, 217 U.S. 268, 281, 30 S.Ct. 501, 54 L.Ed. 762; Waterman v. Canal-Louisiana Bank & Trust Co., supra, 215 U.S. at page 43, 30 S.Ct. at page 12; Arrowsmith v. Gleason, 1888, 129 U.S. 86, 98, 101, 9 S.Ct. 237, 32 L.Ed. 630; Gaines v. Fuentes, 1875, 92 U.S. 10, 23 L.Ed. 524; In re Broderick's Will, supra, 21 Wall. at page 520, 88 U.S. at page 520; Looney v. Capital Nat. Bank, 5 Cir., 235 F.2d 436, 437, certiorari denied, 1956, 352 U.S. 925, 77 S.Ct. 222, 1 L.Ed. 2d 161.

Thus it is that although "the essence of diversity jurisdiction is that a federal court enforces State law and State policy" (Angel v. Bullington, 1947, 330 U.S. 183, 191, 67 S.Ct. 657, 662, 91 L.Ed. 832; Griffin v. McCoach, supra, 313 U.S. at page 507, 61 S.Ct. at page 1027), the federal courts may entertain actions, within their diversity and historic-equity jurisdiction, involving claims to decedents' estates, "notwithstanding the fact that the laws of the state * * * limit the right to establish such demands to a proceeding in the probate courts of the State" (Security Trust Co. v. Black River Nat. Bank, 1902, 187 U.S. 211, 227, 23 S.Ct. 52, 58, 47 L.Ed. 147; cf: Griffith v. Bank of New York, 2 Cir., 147 F.2d 899, 160 A.L.R. 1340, certiorari denied, 1945, 325 U.S. 874, 65 S.Ct. 1414, 89 L.Ed. 1992; Blacker v. Thatcher, 9 Cir., 1944, 145 F.2d 255, 257, 158 A.L. R. 1).

In Payne v. Hook, supra, the Court explained: "The equity jurisdiction conferred on the Federal Courts is the same that the High Court of Chancery in England possesses; is subject to neither limitation or restraint by State legislation, and is uniform throughout the different States of the Union." 7 Wall. at page 430, 74 U.S. at page 430; cf: State of Ohio ex rel. Popovici v. Agler, supra, 280 U.S. at pages 383–384, 50 S.Ct. at pages 154–155 (divorce); Barry

v. Mercein, 1847, 4 How. 103, 119–120, 46 U.S. 103, 119–120, 12 L.Ed. 70 (custody); Albanese v. Richter, 3 Cir., 161 F.2d 688, 689, certiorari denied 1947, 332 U.S. 782, 68 S.Ct. 49, 92 L.Ed. 365 (support).

■ If then a right involving a decedent's estate is such as would have been enforceable in the English Court of Chancery in 1789, and is such as would be enforceable in an action in personam in some court—even a probate court—of the State, a suit to enforce that right may be maintained in a federal court of equity as an action in personam, if diversity of citizenship and the requisite jurisdictional amount exist. Markham v. Allen, supra, 326 U.S. at page 494, 66 S.Ct. at page 298; Waterman v. Canal-Louisiana Bank & Trust Co., supra, 215 U.S. at page 43, 30 S.Ct. at page 12; Payne v. Hook, supra, 7 Wall. at page 430, 74 U.S. at page 430; Hook v. Payne, 1871, 14 Wall. 252, 81 U.S. 252, 20 L.Ed. 887.

■ On the other hand, if any right involving a decedent's estate is by state law made enforceable in an action in personam in a State court—rather than solely in rem in probate proceedings, a diversity suit to enforce the right in the federal courts is a "civil action" within 28 U.S.C. § 1332.

This was the ground upon which jurisdiction was sustained in In re Broderick's Will, supra, where the Court said: "Whilst it is true that alterations in the jurisdiction of the State courts cannot affect the equitable jurisdiction of the Circuit [District] Courts of the United States, so long as the equitable rights themselves remain, yet an enlargement of equitable rights may be administered by the Circuit [District] Courts, as well as by the courts of the State." 21 Wall. at page 520, 88 U.S. at page 520.

■ So it is that "'where a state, by statute or custom, gives to parties interested the right to bring an action * * * to annul a will or to set aside the probate; the courts of the United States, where diversity of citizenship

and a sufficient amount in controversy appear, can enforce the same remedy, but * * * this relates only to independent suits, and not to procedure merely incidental or ancillary to the probate * * *.'" Sutton v. English, supra, 246 U.S. at page 205, 38 S.Ct. at page 256.

■ State-created means for enforcement of a right involving a decedent's estate by a plenary suit or action in personam, rather than in rem in probate proceedings, will be recognized in the federal courts in diversity cases, regardless of whether the state-created means be denominated a state-created right or a state-created remedy. Sutton v. English, supra, 246 U.S. at page 205, 38 S.Ct. at page 256; Farrell v. O'Brien, supra, 199 U.S. at page 110, 25 S.Ct. at page 733; Ellis v. Davis, supra, 109 U.S. at 494–497, 3 S.Ct. at pages 332–334; In re Broderick's Will, supra, 21 Wall. at pages 519–520, 88 U.S. at pages 519–520; Looney v. Capital Nat. Bank, supra, 235 F.2d at page 438; McClendon v. Straub, 5 Cir., 1952, 193 F.2d 596; Sawyer v. White, 8 Cir., 1903, 122 F. 223, 227; Williams v. Crabb, 7 Cir., 117 F. 193, 59 L.R.A. 425, certiorari denied 1902, 187 U.S. 645, 23 S.Ct. 845, 47 L. Ed. 347; McCan v. First Nat. Bank, D.C.D.Or.1954, 139 F.Supp. 224, affirmed 9 Cir., 1956, 229 F.2d 859; accord: Gaines v. Fuentes, supra, 92 U.S. at page 21; Richardson v. Green, 9 Cir., 61 F. 423, certiorari denied 1894, 159 U.S. 264, 15 S.Ct. 1042, 40 L.Ed. 142; cf: Pusey & Jones Co. v. Hanssen, 1923, 261 U.S. 491, 497–498, 43 S.Ct. 454, 67 L.Ed. 763.

■ Accordingly the next question to be confronted is whether the law of Oregon admits of a plenary suit or action in personam, in which plaintiff at bar might set aside the Jackson will or the admission to probate, either upon the ground of undue influence or fraud, or upon the ground that the will admitted to probate is not the last will of the testatrix.

In Oregon, "when a will has been admitted to probate, any person interested may, at any time within six months

after * * * the order of court admitting such will to probate, contest the same or the validity of such will * * *" [ORS 115.180]; and "any * * * person interested in the estate, may, at any time after the death of the testator, petition the court having jurisdiction to have the will proved, whether the same is in his possession or not, or is lost or destroyed * * *." ORS 115.120.

Although the court in which an action or proceeding may be brought to contest the admission to probate or the validity of a will is not named in ORS 115.180, the Oregon courts have consistently held that jurisdiction over will contests is included within the exclusive original jurisdiction of the court admitting the will to probate. Florey v. Meeker, 1952, 194 Or. 257, 240 P.2d 1177, 1187; In re Rigg's Estate, 1925, 120 Or. 38, 241 P. 70; 1936, 250 P. 753; In re Dunn's Will, 1918, 88 Or. 416, 171 P. 1173; Simpson v. Durbin, 1913, 68 Or. 518, 136 P. 347; Mansfield v. Hill, 1910, 56 Or. 400, 107 P. 471, 474, 108 P. 1007.

Even before jurisdiction over will contests was specifically conferred by original ORS 115.180 passed in 1893, the Oregon courts had already included will contests as being within the scope of the exclusive jurisdiction of County Courts of Oregon: "To take proof of wills * * * [and] grant and revoke letters testamentary * * *." Act of 1862, now found in ORS 5.040; Bain v. Cline, 1893, 24 Or. 175, 33 P. 542; Rothrock v. Rothrock, 1892, 22 Or. 551, 30 P. 453; Potter v. Jones, 1891, 20 Or. 239, 25 P. 769, 12 L.R.A. 161; Luper v. Werts, 1890, 19 Or. 122, 23 P. 850; Chrisman v. Chrisman, 1888, 16 Or. 127, 18 P. 6; Clark's Heirs v. Ellis, 1881, 9 Or. 128, 132; Brown v. Brown, 1879, 7 Or. 285, 286, 299–300; Greenwood v. Cline, 1879, 7 Or. 17, 18 [Reprint pp. 1, 2].

So it is that, if plaintiff at bar were to seek, in the Oregon courts, to contest the validity of the Jackson will or to revoke the admission to probate upon the grounds here alleged, he would find a remedy only in the State court which has admitted the will to probate, namely, the probate court. Plaintiff would also find, were he successful in the state-court action, that the judgment or decree would declare not only that the "will is set aside, declared void or inoperative, [but also that] * * * letters [testamentary] shall be revoked, and letters of administration issued." ORS 115.200.

In order to possess the jurisdiction or power to grant such extensive relief, the court must hear and determine any petition questioning the will in a proceeding in rem, directly affecting the administration of the decedent's estate. For "in case of a judgment, decree or order * * * in respect to the probate of a will or the administration of the estate of a deceased person * * * the judgment, decree or order is conclusive upon * * * the will or administration * * *." ORS 43.130.

Thus actions in Oregon questioning the validity of a will, or its admission to probate, have retained the traditional in rem character of proceedings in probate directly affecting the decedent's estate—the res (In re Anderson's Estate, 1936, 157 Or. 365, 71 P.2d 1013, 1015; In re Rigg's Estate, supra, 120 Or. 38, 241 P. at page 71, 250 P. 753; Mansfield v. Hill, supra, 56 Or. 400, 107 P. 471, 474, 108 P. 1007; Hubbard v. Hubbard, 1879, 7 Or. 42, 43, 44; Jones v. Dove, 1876, 6 Or. 188, 189); and have remained within the exclusive jurisdiction of the probate courts of Oregon (see, e. g.: In re Fredrick's Estate, 1955, 204 Or. 378, 282 P.2d 352; In re Urich's Estate, 1952, 194 Or. 429, 242 P.2d 204; In re Porter's Estate, 1951, 192 Or. 483, 235 P.2d 894).

The in rem character of such an action in the State court is determined of course by the court's jurisdiction over the res and the res judicata effect of its judgment upon the world; hence the fact that the petition seeking revocation of the probate of a will may be filed only after the initial ex parte admission to probate [ORS 115.180] does not destroy the continuity of the in rem proceedings in the probate court. Nor does the dif-

ference between the notice requirements applicable to the initial petition to probate [ORS 116.505], and the petition to revoke probate [ORS 115.010], affect the essential in rem character of the jurisdiction of the probate court in taking both procedures. Cf. Spencer v. Watkins, supra, 169 F. at page 382.

It should be noted, moreover, that in Oregon an action attacking only a part rather than the entire will nonetheless invokes the in rem jurisdiction of the probate court, since it will result in either setting aside or reaffirming the admission to probate of the challenged provisions of the will. In re Allen's Estate, 1925, 116 Or. 467, 241 P. 996, 1006.

■ Even though the in rem nature of the action were not apparent from the probate court's continuing jurisdiction over the res and the scope and effect of its judgment, the very character of the exclusive and limited jurisdiction of the probate courts of Oregon requires the same conclusion.

The Oregon constitution of 1857 vested judicial power "in a supreme court, circuit courts, and county court, which shall be courts of record, having general jurisdiction, to be defined * * *" [Or.Const. art. VII, § 1 (1857)]; and conferred upon the circuit courts "all judicial * * * jurisdiction not vested * * * exclusively in some other court * * *." [id. § 9.]

Although the 1857 constitution defines the County Court as a court "having general jurisdiction" [id. § 1], it has been consistently held that Oregon courts exercising probate jurisdiction are merely "courts of general jurisdiction within their [probate] field" (In re Stroman's Estate, 1946, 178 Or. 100, 165 P.2d 576, 580; Tustin v. Gaunt, 1873, 4 Or. 305, 308–309). For "the nature and extent of their jurisdiction depend upon the statute [and the constitution], and they possess no other or greater powers than so conferred." Johnston v. Shofner, 1892, 23 Or. 111, 31 P. 254, 256.

Thus the probate courts of Oregon have "no original equity jurisdiction"

(ibid.; see also Arnold v. Arnold, 1952, 193 Or. 490, 237 P.2d 963, 239 P.2d 595; In re Elder's Estate, 1938, 160 Or. 111, 83 P.2d 477, 478, 119 A.L.R. 302; Weill v. Clark's Estate, 1881, 9 Or. 387, 391; Burnside v. Savier, 1876, 6 Or. 154, 156); nor "common-law jurisdiction" (In re Stroman's Estate, supra, 178 Or. 100, 165 P.2d at page 581).

By a series of statutes enacted in 1919, 1929, and 1949, the Oregon legislature, under the power conferred by the 1910 amendment of Article VII of the State Constitution, transferred probate jurisdiction in certain judicial districts from the County Court to the Circuit Court. By one of these enactments, the legislature conferred upon the Circuit Court of Multnomah County, Oregon, "full, complete, general and exclusive jurisdiction, authority and power in equity, in the first instance, in all matters whatever pertaining to a court of probate, including the construing of, and declaration of rights under, wills and codicils, and therein the determining of question of title to real, personal or mixed property * * *." ORS 3.340.

■ The obvious question posed by these statutes is whether this transfer of probate jurisdiction, from a court of limited jurisdiction, albeit one of general jurisdiction in the exercise of probate jurisdiction, to a court of general jurisdiction at law and in equity, operated to change the nature of an action in probate court from a limited and statutory proceeding in rem to an action in personam.

The answer has been provided by the Supreme Court of Oregon in Arnold v. Arnold, supra, 1952, 193 Or. 490, 237 P. 2d 963, 968–970, 239 P.2d 595, where it was held that although the legislature, in transferring probate jurisdiction from the County Court to the Circuit Court of Multnomah County, added jurisdiction to construe wills of real and mixed property as well as personal property, the Circuit Court, when sitting in probate—like the County Court before it—possesses only a limited and statutory probate jurisdiction, without general legal or equitable power. Cf: In re Pittock's

Will, 1921, 102 Or. 159, 199 P. 633, 202 P. 216, 17 A.L.R. 218; 102 Or. 47, 201 P. 428; Leadbetter v. Price, 1921, 103 Or. 222, 202 P. 104; In re Johnson's Estate, 1921, 100 Or. 142, 196 P. 385, 1115.

Thus, the Circuit Court of Multnomah County, when sitting in probate, possesses no jurisdiction of controversies which do not "grow out of the provisions of a will, and [in which] the court * * * [is] not called upon to construe or declare rights under a will" (Arnold v. Arnold, supra, 193 Or. 490, 237 P.2d at page 970); for only such controversies fall within the terms of the statute conferring probate jurisdiction (ORS 3.340; cf: Wadhams & Co. v. State Tax Commission, 1954, 202 Or. 132, 273 P.2d 440, 442; Ashford v. Ashford, 1954, 201 Or. 206, 249 P.2d 968, 268 P.2d 382, 385; Ex parte Quinn, 1951, 192 Or. 254, 233 P.2d 767, 772).

This is true even though the legislature conferred this limited probate jurisdiction "not upon the probate department of the circuit court but upon the Circuit Court for Multnomah County." McCulloch v. United States Nat. Bank, 1956, 207 Or. 508, 297 P.2d 1076, 1077.

In his effort to sustain federal equity jurisdiction in the case at bar, plaintiff places heavy reliance upon Richardson v. Green, supra, 61 F. 423, as establishing the Ninth Circuit's interpretation of the nature of Oregon-will-contest jurisdiction. However, this case contains jurisdictional questions only superficially similar to those raised in the case at bar.

At the time the complaint in Richardson v. Green was filed and federal diversity jurisdiction attached (Saint Paul Mercury Ind. Co. v. Red Cab Co., 1938, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845; Louisville, N. A. & C. Ry. Co. v. Louisville Trust Co., 1899, 174 U.S. 552, 566, 19 S.Ct. 817, 43 L.Ed. 1081; Dunn v. Clarke, 1834, 8 Pet. 1, 2, 33 U.S. 1, 2, 8 L.Ed. 845; Mullen v. Torrance, 1824, 9 Wheat. 537, 538, 22 U.S. 537, 538, 6 L. Ed. 154; Anderson-Thompson, Inc., v. Logan Grain Co., 10 Cir., 1956, 238 F.2d 598), plaintiff there was seeking an adjudication that both a deed, and a will devising "certain real estate" were forgeries. The purported will had not as yet been admitted to probate, or even offered for probate.

The Circuit Court of Appeals affirmed the trial court's decision that federal diversity jurisdiction over the subject matter of the suit was present, inasmuch as the causes of action alleged, both as to the deed and as to the unprobated will, were "suits in equity" cognizable in the Circuit Court of Oregon—a state court of general jurisdiction.

The attack upon the deed would ordinarily have been the subject of an action at law in the state or federal courts; but because the grantee's right of curtesy rendered any remedy at law inadequate, the case fell within equity jurisdiction. Richardson v. Green, supra, 61 F. at page 429.

Since "by the law in all the states, no instrument can be effective as a will until proved" (Ellis v. Davis, supra, 109 U.S. at page 497, 3 S.Ct. at page 334), the attack in Richardson v. Green upon the validity of the will, as yet unproved in the probate court, was within the historic in personam jurisdiction of courts of equity—including the English High Court of Chancery in 1789—to set aside all forged instruments or muniments, as forged deeds. Gaines v. Fuentes, supra, 92 U.S. at pages 17, 20; Meister v. Finley, Or., 1956, 300 P.2d 778; Mansfield v. Hill, supra, 56 Or. 400, 107 P. 471, 108 P. 1007; see also: Bennet v. Vade, supra, 2 Atk. 324, 26 Eng. Rep. 597; James v. Greaves, 2 P.Wms. 270, 24 Eng.Rep. 726, (K.B. 1725).

Upon the particular facts of the Richardson case, then, the decision was an unnecessary (Gaines v. Fuentes, supra, 92 U.S. 10), but nonetheless correct view of Oregon equity jurisdiction. For a "suit for contesting a will * * * in Oregon [such as the unproved will in Richardson] is undoubtedly one between parties, and binding only the parties thereto, and hence is such a one as a circuit court of the United States could take jurisdiction of", where diversity of

citizenship exists and the requisite amount is in controversy. Richardson v. Green, supra, 61 F. at page 428. But the holding may not correctly be extended to include the dictum as to actions to set aside wills "after the probating of the same in Oregon." Ibid.

If it be assumed, however, that this dictum is properly to be considered as within the decision, there remains to be recalled the fact that, while the Richardson case was pending, the Oregon legislature enacted the Act of 1893 [now found in ORS 115.180] providing: "When a will has been admitted to probate, any person interested may, * * * after * * * the order of court admitting such will to probate, contest the same or the validity of such will * * *." While the enactment just quoted does not so specify, this legislation has since been interpreted by the Oregon courts as conferring exclusive jurisdiction over such will contests upon the probate courts as such, at that time solely the County Courts—and not upon the Oregon courts of general equitable jurisdiction, the Circuit Courts. Florey v. Meeker, supra, 194 Or. 257, 240 P.2d 1177, 1187.

It follows, then, that as to the first and third claims or causes of action to declare invalid parts of the Jackson will and the codicils thereto, by reason of alleged fraud and undue influence, and revocation by a subsequent will, plaintiff has failed to allege, and cannot allege the existence of "grounds upon which the court's jurisdiction depends." Fed.R. Civ.P. 8(a, b); K. V. O. S., Inc., v. Associated Press, 1936, 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183; McNutt v. General Motors Acceptance Corp., 1936, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135; Seslar v. Union Local 901, Inc., 7 Cir., 186 F.2d 403, 407, 30 A.L.R.2d 593, certiorari denied 1951, 341 U.S. 940, 71 S.Ct. 1000, 95 L.Ed. 1367.

█ However, that portion of plaintiff's second cause of action which seeks to have construed and declared invalid the trust provisions contained in the will, as being contrary to the law and the pub-

lic policy of Oregon, is found to be within the historic scope of federal equity jurisdiction. Waterman v. Canal-Louisiana Bank & Trust Co., supra, 215 U.S. at pages 45–46, 30 S.Ct. at page 13; Blacker v. Thatcher, supra, 145 F.2d at pages 257–258; Chicago Bank of Commerce v. McPherson, 6 Cir., 62 F.2d 393, 694, certiorari denied 1932, 289 U.S. 736, 53 S.Ct. 596, 77 L.Ed. 1484; accord: Gaines v. Fuentes, supra, 92 U.S. at page 21; Spencer v. Watkins, 8 Cir., 1909, 169 F. 379; XII Holdsworth, op. cit. supra at 686–89 (1st ed. 1938); IV Pomeroy, Equity Jurisprudence §§ 1155–58 (5th ed. 1941); cf. Looney v. Capital Nat. Bank, supra, 235 F.2d 436; Rice v. Sayers, 10 Cir., 198 F.2d 724, 725, certiorari denied 1952, 344 U.S. 877, 73 S. Ct. 172, 97 L.Ed. 680; Lee v. Minor, 9 Cir., 260 F. 700, certiorari denied 1919, 253 U.S. 488, 40 S.Ct. 485, 64 L.Ed. 1027; Simler v. Wilson, D.C.W.D.Okl., 110 F. Supp. 761, 763, reversed 10 Cir., 1953, 210 F.2d 99, 102, reversed per curiam 1955, 350 U.S. 892, 76 S.Ct. 153, 100 L. Ed. 785 (semble); Ferguson v. Patterson, 10 Cir., 1951, 191 F.2d 584.

█ And since "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings" [Fed.R.Civ.P. 54(c)], plaintiff's complaint as amended may also be regarded as an action to impose a constructive trust upon the ground of the fraud of the executors, allegedly perpetrated in petitioning for admission to probate of a prior will while withholding a later, missing will or codicil from the probate court. Viewed in this light, that portion of plaintiff's third cause of action may be construed to fall within the equity jurisdiction of this court. Gaines v. Chew, supra, 2 How. at page 645, 43 U.S. at page 645; Patterson v. Dickinson, 9 Cir., 1912, 193 F. 328, 333–334; McCan v. First Nat. Bank, supra, 139 F.Supp. at page 227; see also Barnesly v. Powel, supra, 1 Ves.Sen. 284, 27 Eng.Rep. 1034.

█ Furthermore, that portion of plaintiff's fourth cause of action, which

asserts that, as to all property not disposed of by will, the testatrix died intestate leaving plaintiff as her sole heir and next of kin, also falls within the scope of federal equity jurisdiction to adjudicate in personam the validity and amount of claims of heirs and others, to estates in probate. Markham v. Allen, supra, 326 U.S. at page 494, 66 S.Ct. at page 298 (alternative holding); Sutton v. English, supra, 246 U.S. at page 205, 38 S.Ct. at page 256; McClellan v. Carland, supra, 217 U.S. at page 281, 30 S. Ct. at page 504; Waterman v. Canal-Louisiana Bank & Trust Co., supra, 215 U.S. at page 45, 30 S.Ct. at page 13; Payne v. Hook, supra, 7 Wall. 425, 74 U.S. 425; cf. Strickland v. Peters, 5 Cir., 1941, 120 F.2d 53.

Inasmuch as plaintiff's second and fourth causes of action, and the third cause of action insofar as it may seek to impress a constructive trust, are within the scope of federal equity jurisdiction, next to be considered is the problem whether "the facts stated in the present bill lay a sufficient ground for equitable interference with the probate of [the Jackson] * * * will, or for establishing a trust in favor of the * * * plaintiff." In re Broderick's Will, supra, 21 Wall. at page 517, 88 U.S. at page 517.

■ For it is the duty of the court to determine at the outset "whether in any given instance a suit of which a district court has jurisdiction as a federal court is an appropriate one for the exercise of the extraordinary powers of a court of equity." Atlas Life Ins. Co. v. W. I. Southern, Inc., supra, 306 U.S. at page 570, 59 S.Ct. at page 660; Alabama Public Service Comm. v. Southern Ry., 1951, 341 U.S. 341, 345, 71 S.Ct. 762, 95 L.Ed. 1002; Meredith v. City of Winter Haven, 1943, 320 U.S. 228, 234–235, 64 S.Ct. 7, 88 L.Ed. 9; Di Giovanni v. Camden Fire Ins. Ass'n, 1935, 296 U.S. 64, 69, 56 S.Ct. 1, 80 L.Ed. 47; Twist v. Prairie Oil Co., supra, 274 U.S. at pages 690–691, 47 S.Ct. at pages 757–758; Massachusetts State Grange v. Benton, 1926, 272 U.S. 525, 528, 47 S.Ct. 189, 71 L.Ed. 387; Reynes v. Dumont, 1889, 130 U.S.

354, 395, 9 S.Ct. 486, 32 L.Ed. 934; Payne v. Hook, supra, 7 Wall. at page 430, 74 U.S. at page 430.

If the case does not warrant the exercise of the court's equitable powers, this fact, "if obvious, may and should be objected to by the court of its own motion." Matthews v. Rodgers, 1932, 284 U.S. 521, 524, 52 S.Ct. 217, 219, 76 L.Ed. 447; Singer Sewing Machine Co. of New Jersey v. Benedict, 1913, 229 U.S. 481, 484, 33 S.Ct. 942, 57 L.Ed. 1288; Lewis v. Cocks, 1874, 23 Wall. 466, 470, 90 U.S. 466, 470, 23 L.Ed. 70.

At this juncture, it should be recalled that, by his second cause of action, plaintiff seeks this court's construction of the terms of the testamentary trust, which plaintiff alternatively seeks to set aside as invalid for fraud and undue influence upon the testatrix. Being without jurisdiction over the issue as to the validity of the testamentary trust itself, this court does not, in the exercise of equity jurisdiction, reach the alternative, and in effect subsidiary, cause of action to construe the provisions of the trust.

For "a court of equity ought to do justice completely, and not by halves." Camp v. Boyd, 1913, 229 U.S. 530, 551, 33 S.Ct. 785, 793, 57 L.Ed. 1317. Although this maxim has been used most frequently to extend equity "clean-up" jurisdiction over aspects of a controversy of legal cognizance (United States v. Union Pacific Ry. Co., 1895, 160 U.S. 1, 52, 16 S.Ct. 190, 40 L.Ed. 319), the maxim is properly applied here, and with equal force.

■■ Until validity of the testamentary trust provisions has been finally adjudicated in the probate court of Oregon [ORS 115.180], this court could not "do justice completely", and instead would be compelled to do justice "by halves", which in equity it will not do. Waterman v. Canal-Louisiana Bank & Trust Co., supra, 215 U.S. at page 46, 30 S.Ct. at page 13; Walker v. First Trust & Sav. Bank, 8 Cir., 1926, 12 F.2d 896, 75 A.L.R. 757; Spencer v. Watkins, supra, 169 F. at page 382; Wood

v. Paine, C.C.D.R.I.1895, 66 F. 807; Gebhard v. Lennox Library, 1907, 74 N.H. 416, 68 A. 540.

The same situation exists with respect to plaintiff's fourth cause of action. Hence this court, in the exercise of its equity jurisdiction, does not reach the secondary and auxiliary claim for an adjudication of heirship in the event of partial intestacy. See Sutton v. English, supra, 246 U.S. at page 207, 38 S.Ct. at page 257; cf. Markham v. Allen, supra, 326 U.S. at page 495, 66 S.Ct. at page 298. Moreover, because of lack of federal equity jurisdiction to adjudicate the issues as to validity of the will and codicils, as sought in the first and third causes of action, the claim of heirship does not now present a justiciable controversy—a "Controversy" within the meaning of the Constitution. U.S.Const. art. III, § 2, cl. 1; Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, supra, 300 U.S. at pages 240–241, 57 S.Ct. at pages 463–464.

Insofar as the third cause of action asserts a claim to have declared a constructive trust, which is not the main purpose of this action but merely an incidental aspect of the whole controversy, this court, being without equity jurisdiction to adjudicate the principal controversy, will refuse, as a matter of discretion, to exercise equity jurisdiction to adjudicate the subsidiary claim of fraud upon the probate court of Oregon, in the alleged suppression of a later, missing will or codicil. Ellis v. Davis, supra, 109 U.S. at pages 503–504, 3 S.Ct. at pages 338–339; Haines v. Carpenter, 1875, 91 U.S. 254, 257, 23 L.Ed. 345; In re Broderick's Will, supra, 21 Wall. at page 517, 88 U.S. at page 517.

This discretionary refusal to exercise such equity jurisdiction as may exist to do justice "by halves" is made in the light of plaintiff's unquestioned and current right to seek, in the proper probate court of the State of Oregon, all the relief which he seeks here [ORS 115.180, 115.120, 115.130, 3.340]; and the high probability that, if this court were to retain jurisdiction of part of the controversy under the circumstances, plaintiff might indeed confront a situation where the Oregon court itself would refuse to do justice "by halves" (cf. Phipps v. Kelly, 1885, 12 Or. 213, 6 P. 707, 712).

As a distinguished scholar in the field of equity jurisprudence once wisely admonished: "The advantages of vesting a court with both legal and equitable powers are not to be denied. But when the doctrines of equity are no longer administered in a separate court, it is all the more important not to lose sight of the fundamental distinction between law and equity,—a distinction as eternal as the difference between rights *in rem* and rights *in personam*." [Ames, note, 4 Harv.L.Rev. 394, 395 (1891); see Scott & Simpson, Cases and Other Materials on Civil Procedure, 232–249 (1951).]

Also to be heeded as of course is the admonition of the Court in Healy v. Ratta, 1934, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248: "The power reserved to the states, under the Constitution (Amendment 10), to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution (article 3). * * * Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." 292 U.S. at page 270, 54 S.Ct. at page 703; Baltimore Contractors, Inc., v. Bodinger, 1955, 348 U.S. 176, 181, 75 S.Ct. 249, 99 L.Ed. 233; Cohens v. Commonwealth of Virginia, 1821, 6 Wheat. 264, 403, 19 U.S. 264, 403, 5 L.Ed. 257.

For the reasons stated, the action must be dismissed because the principal controversy, the main cause, is beyond the historic scope of federal equity jurisdiction; for "lack of jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(1); Matthews v. Rodgers, supra, 284 U.S. at pages 524, 529–530, 52 S.Ct. at pages 219, 221; Twist v. Prairie Oil Co., supra, 274 U.S. at page 690, 47 S.Ct. at page 757; Venner v. Great Northern Ry.

Co., 1908, 209 U.S. 24, 34, 28 S.Ct. 328, 52 L.Ed. 666; Blythe v. Hinckley, 1899, 173 U.S. 501, 507, 19 S.Ct. 497, 43 L.Ed. 783; Lewis v. Cocks, supra, 28 Wall. 466, 90 U.S. 466.

The judgment dismissing the action shall not operate "as an adjudication upon the merits" [Fed.R.Civ.P. 41(b)], and the judgment to be entered shall so provide.

The attorneys for defendants may serve and lodge with the Clerk within ten days a judgment of dismissal accordingly, to be settled according to rule.

